**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANET BAKER AND JAMES BAKER, | |
| Plaintiffs, | |
| v. | |
| GOLDMAN, SACHS & CO., THE GOLDMAN SACHS GROUP, INC., and THE GOLDMAN, SACHS & CO. L.L.C., | Civil Action No. 09-10053-PBS |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

John D. Donovan, Jr. (BBO# 130950)
Annmarie A. Tenn (BBO# 658789)
Matthew L. McGinnis (BBO# 666120)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Telephone: (617) 951-7000
Fax: (617) 951-7050
john.donovan@ropesgray.com
annmarie.tenn@ropesgray.com
matthew.mcginnis@ropesgray.com

Of counsel:

Paul Vizcarrondo
Wachtell, Lipton Rosen & Katz
51 West 52nd Street
New York, New York 10019

*Counsel for Goldman, Sachs & Co., The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C.*

February 27, 2009

## TABLE OF CONTENTS

STATEMENT OF FACTS ..................................................................................................2

THE BAKERS' COMPLAINT ...........................................................................................4

ARGUMENT ......................................................................................................................6

I.    GOLDMAN OWED NO CONTRACTUAL DUTIES TO THE BAKERS UNDER ITS AGREEMENT WITH DRAGON..................................................................6

II.    GOLDMAN OWED NO EXTRA-CONTRACTUAL DUTIES TO THE BAKERS ......10

    A.    Goldman Owed No Fiduciary Duty to the Bakers....................................................10

    B.    Goldman Owed No Duty of Care to the Bakers .......................................................13

III.    THE BAKERS HAVE FAILED TO ALLEGE WITH PARTICULARITY ANY ACTIONABLE MISREPRESENTATIONS BY GOLDMAN .........................................15

IV.    THE BAKERS CANNOT ASSERT A CLAIM UNDER MASS. GEN. LAWS CH. 93A § 11 ..................................................................................................................17

V.    THE BAKERS HAVE NO STANDING TO ASSERT CLAIMS ON BEHALF OF DRAGON.........................................................................................................................19

VI.    THE BAKERS HAVE ALLEGED NO WRONGDOING BY THE GOLDMAN SACHS GROUP, INC. OR THE GOLDMAN, SACHS & CO. L.L.C...........................21

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*,
  866 N.Y.S.2d 578 (2008) .................................................................................................10, 12

*Aisenberg v. Hallmark Mktg. Corp.*,
  337 F. Supp. 2d 257 (D. Mass. 2004) .......................................................................................7

*AJW Partners, LLC v. Cyberlux Corp.*,
  No. 603098/07, 2008 WL 4514171 (N.Y. Sup. Ct. Sept. 19, 2008)........................................12

*Alusit Ltd. v. Aluglas of Pa.*,
  No. 89 Civ. 3849, 1990 WL 209422 (S.D.N.Y. Dec. 4, 1990)..................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007)......................................................................................6

*Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*,
  No. 04-11411-NMG, 2007 WL 4707647 (D. Mass. Feb. 5, 2007) .........................................7

*Billing v. GTFM, LLC*,
  449 Mass. 281, 867 N.E.2d 714 (Mass. 2007)..................................................................19, 21

*Brinsights, LLC v. Charming Shoppes of Del., Inc.*,
  No. 06 Civ. 1745, 2008 WL 216969 (S.D.N.Y. Jan. 17, 2008).............................................16

*Cash Energy, Inc. v. Weiner*,
  768 F. Supp. 892 (D. Mass. 1991) .........................................................................................18

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
  81 N.Y.2d 821 (1993) ............................................................................................................15

*Columbia Air Servs., Inc. v. Fid. Mgmt. Trust Co.*,
  No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008).......................................2

*Dueren v. Credit Suisse First Boston Corp.*,
  No. 02 CV 3921, 2003 WL 21767509 (S.D.N.Y. July 31, 2003)...........................................19

*Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*,
  138 A.D.2d 446 (N.Y. App. Div. 1988) ..................................................................................8

*Ernest Lawrence Group v. Mktg. the Ams., Inc.*,
  No. 03 CIV. 1510, 2005 WL 2811781 (S.D.N.Y. Oct. 27, 2005) ..........................................17

*Feldman v. Cutaia,*
    951 A.2d 727 (Del. 2008) ........................................................................................19, 21

*Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. N.Y., Inc.,*
    241 A.D.2d 906 (N.Y. App. Div. 1997) .................................................................9

*Freeman v. MetLife Group, Inc.,*
    583 F. Supp. 2d 218 (D. Mass. 2008) ..................................................................16

*Friedman v. Mohasco Corp.,*
    929 F.2d 77 (2d Cir. 1991)....................................................................16, 17, 21

*Gupta v. Nat'l Life Ins. Co.,*
    No. 04-cv-0252E, 2006 WL 2000118 (W.D.N.Y. July 17, 2006)...........................8

*Helmsley v. Cohen,*
    391 N.Y.S.2d 522 (App. Div. 1977) ...................................................................21

*HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC,*
    517 F.3d 454 (7th Cir. 2008) ....................................................................1, 12, 14

*Hirshberg v. Appel,*
    266 Mass. 98, 164 N.E. 915 (Mass. 1929).............................................................20

*In re Cytyc,*
    No. Civ.A. 02-12399-NMG, 2005 WL 3801468 (D. Mass. Mar. 2, 2005) ..............................2

*In re Fid./Apple Sec. Litig.,*
    986 F. Supp. 42 (D. Mass. 1997) .................................................................16, 17

*In re Sonus Networks, Inc.,*
    499 F.3d 47 (1st Cir. 2007)...................................................................................19

*In re Trump S'holder Derivative Litig.,*
    No. 96 Civ. 7820, 2000 WL 1371317 (S.D.N.Y. Sept. 21, 2000) ..........................10

*Int'l Floor Crafts, Inc. v. Adams,*
    477 F. Supp. 2d 336 (D. Mass. 2007) ..................................................................16

*Joseph v. Shell Oil Co.,*
    482 A.2d 335 (Del. Ch. 1984)...............................................................................12

*Joyce v. Morgan Stanley & Co.,*
    538 F. 3d 797 (7th Cir. 2008) .............................................................1, 10, 11, 12

*Joyce v. Morgan Stanley & Co., Inc.,*
    No. 06 C 4754, 2007 WL 967933 (N.D. Ill. Mar. 29, 2007) ....................................11

*Kolodziej v. Gosciak*,
   No. 08-cv-251A, 2008 WL 2260601 (W.D.N.Y. May 30, 2008)..............................................8

*Kramer v. W. Pac. Indus., Inc.*,
   546 A.2d 348 (Del. 1988) .......................................................................................................20

*Levine v. Yokell*,
   258 A.D.2d 296 (N.Y. App. Div. 1999) ..................................................................................9

*Lewis v. Anderson*,
   477 A.2d 1040 (Del. 1984) .....................................................................................................21

*Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt., Inc.*,
   No. CV-07-715, 2008 WL 1787684 (E.D.N.Y. Apr. 17, 2008) ........................................13, 16

*Locator Servs. Group, Ltd. v. Treas. & Receiver Gen.*,
   443 Mass. 837, 825 N.E.2d 78 (Mass. 2005)..........................................................................10

*M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*,
   247 A.D.2d 515 (N.Y. App. Div. 1998) ..................................................................................7

*Massey v. Merrill Lynch & Co.*,
   464 F.3d 642 (7th Cir. 2006) ........................................................................1, 11, 12, 16, 20

*Meyer v. Goldman, Sachs & Co.*,
   234 A.D.2d 129 (N.Y. App. Div. 1996) ..............................................................................1, 14

*Meyer v. Park S. Assocs.*
   552 N.Y.S.2d 614 (App. Div. 1990) ......................................................................................21

*Milliken & Co. v. Duro Textiles, LLC*,
   451 Mass. 547, 887 N.E.2d 244 (Mass. 2008)........................................................................18

*Natural Stone Warehouse Inc. v. AKG Yahtim VE Insaat Malzemeiri Sanayi Ve Ticaret A.S.*,
   No. 46699/07, 2008 WL 4193247 (N.Y. Sup. Ct. Sept. 15, 2008)...........................................7

*New Castle Siding Co. v. Wolfson*,
   481 N.Y.S.2d 70 (1984)..........................................................................................................20

*Nycal v. KPMG Peat Marwick LLP*,
   426 Mass. 491, 688 N.E.2d 1368 (Mass. 1998)......................................................................13

*O'Connor v. Merrimack Mut. Fire Ins. Co.*,
   73 Mass. App. Ct. 205, 897 N.E.2d 593 (Mass. App. Ct. 2008) ............................................16

*Ormond v. Anthem, Inc.*,
   No. 1:05-cv-1908, 2008 WL 906157 (S.D. Ind. Mar. 31, 2008) ............................................14

*Peterson v. Richard*,
 71 Mass. App. Ct. 1127, 888 N.E.2d 386 (Mass. App. Ct. 2008) .....................................10, 12

*Premier-N.Y., Inc. v. Travelers Prop. Cas. Corp.*,
 867 N.Y.S.2d 20, 2008 WL 2676800 (Sup. Ct. 2008)..............................................................15

*Reder v. Travelers Plan Adm'rs of Conn., Inc.*,
 44 F. Supp. 2d 92 (D. Mass. 1999) ..........................................................................................13

*Risberg v. McArdle*,
 529 F. Supp. 2d 213 (D. Mass. 2008) .........................................................................................2

*SNS Bank v. Citibank, N.A.*,
 777 N.Y.S.2d 62 (App. Div. 2004) ...........................................................................................15

*Stuchen v. Duty Free Int'l, Inc.*,
 No. 94C-12-194, 1996 WL 33167249 (Del. Super. Ct. Apr. 22, 1996) ...................................14

*Thomas v. Rhode Island*,
 542 F.3d 944 (1st Cir. 2009)........................................................................................................6

*Walker v. Chiauzzi*,
 --- N.Y.S.2d ---, 2008 WL 5412309 (App. Div. Dec. 31, 2008) ............................................13

*Young v. Goldman, Sachs & Co.*,
 No. 08 CH 28542, 2009 WL 247626 (Ill. Cir. Ct. Jan. 13, 2009) .......................1, 9, 11, 12, 13


## OTHER AUTHORITIES

FED. R. CIV. P. 9(b) ..........................................................................................................................2, 16

FED. R. CIV. P. 12(b)(6)........................................................................................................................6

MASS. GEN. LAWS ch. 93A, § 11...................................................................................................... 17

N.Y. PARTNERSHIP LAW §§ 24-26.....................................................................................................21

Over eight years ago, Lernout & Hauspie Speech Products, N.V. ("L&H") acquired Dragon Systems, Inc. ("Dragon") in exchange for shares of stock that soon proved worthless. Since then, Janet and James Baker – Dragon's founders and largest stockholders – have sued twenty-nine (29) separate defendants in four (4) separate lawsuits in Massachusetts, New York and Delaware in search of a recovery.  Having exhausted those other potential sources, the Bakers now focus on Goldman, Sachs & Co. ("Goldman"), which acted as financial advisor in the transaction to Dragon, and not to the Bakers personally.  According to the Complaint, Goldman failed to perform its work diligently, should have detected and warned of L&H's impending implosion, and made material misrepresentations to the Bakers.

Were there any truth to those allegations, the Bakers would not have waited eight years to assert them.  But even accepting them at face value, they do not establish an actionable claim. Despite the Complaint's attempt to imply duties owed directly to the Bakers, Goldman's only duties arising from its assignment ran exclusively to its client Dragon – and *not* to the Bakers.

Indeed, Goldman's contract could not have been clearer in flatly precluding precisely this sort of direct claim by shareholders of Goldman's client.  On its face, the contract is exclusively between Dragon and Goldman.  The Bakers are not included within the agreement's terms, and the contract negates any intention for third parties to be beneficiaries of Goldman's advice.  That forecloses any contract-based claim.  Nor was Goldman in privity with the Bakers.  That forecloses any *extra*-contractual duty – including a fiduciary duty, a common law standard of care, or a statutory responsibility.  Courts across the land have consistently rejected tort claims like these against a financial advisor brought by shareholders of the corporate client.[1]  Put

---

[1]    *See*, *e.g.*, *Joyce v. Morgan Stanley & Co.*, 538 F.3d 797 (7th Cir. 2008);  *Massey v. Merrill Lynch & Co.*, 464 F.3d 642 (7th Cir. 2006); *Young v. Goldman, Sachs & Co.*, No. 08 CH 28542, 2009 WL 247626 (Ill. Cir. Ct. Jan. 13, 2009); *Meyer v. Goldman, Sachs & Co.*, 234 A.D.2d 129 (N.Y. App. Div. 1996); *cf. HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*, 517 F.3d 454 (7th Cir. 2008) (claim by liquidating trust dismissed).

simply, standing to sue does not extend to by-standers. But as to Goldman, that is all the individual plaintiffs are.

Beyond standing, the Bakers have presented no false "representations" by Goldman that could be actionable. The supposed "representations" amount to classic statements of opinion, or the mere transmission of information that came from some other source. Nowhere do the Bakers identify a false statement of fact by Goldman, much less a falsehood specified with the particularity demanded by Fed. R. Civ. P. 9(b). And they do not even attempt to establish how any "representations" were made to them individually. Since Goldman acted exclusively as financial advisor to Dragon, the Bakers only received Goldman's ostensible "representations" as corporate representatives. But that gives them no individual claim.

These failings mean the Complaint does not state a cognizable cause of action. The Bakers' claim of last resort against Goldman[2] should be dismissed.

## STATEMENT OF FACTS[3]

Dragon was founded by the Bakers to develop and sell speech-recognition and language technology. Ct. ¶¶ 3, 8. In the fall of 1999, Dragon was approached about "merging . . . into L&H." Ct. ¶ 12. At that time, the Bakers collectively owned 51% of Dragon's stock, and Janet

---

[2]    There is no possible basis here for the Bakers to include The Goldman Sachs Group, Inc. or The Goldman, Sachs & Co. L.L.C. as defendants. The Complaint contains no allegations of wrongdoing – or, indeed, of any conduct at all – by those entities. They appear to have been included as defendants only because the Complaint wrongly alleges they are general partners of Goldman. Whether or not any ultimate judgment against Goldman may be enforced against its partners, they should be dismissed as parties absent a cognizable claim properly pleaded against them.

[3]    Although, on a motion to dismiss, well-pleaded facts must be accepted as true, the court need not credit conclusory statements, statements contradicted by facts alleged in the Complaint, or statements contradicted by documents referred to in the Complaint. Defendants may also rely on documents referred to in the Complaint and matters of public record. *See Columbia Air Servs., Inc. v. Fid. Mgmt. Trust Co.*, No. 07-11344, 2008 WL 4457861, at *2 (D. Mass. Sept. 30, 2008); *Risberg v. McArdle*, 529 F. Supp. 2d 213, 219 (D. Mass. 2008); *In re Cytyc Corp.*, No. Civ.A. 02-12399, 2005 WL 3801468, at *2 n.2 (D. Mass. Mar. 2, 2005).

Baker was a member of Dragon's Board of Directors. *See* Ct. ¶ 3. James Baker held no management position. *Cf.* Ct. ¶ 3.

On December 8, 1999, Dragon engaged Goldman to serve as its financial advisor. Ct. ¶ 16. The agreement entered into by Dragon and Goldman (the "Engagement Contract") confirmed "the arrangements under which Goldman, Sachs & Co. ("Goldman Sachs") is exclusively engaged *by Dragon Systems, Inc.* . . . as financial advisor in connection with the possible sale of all or a portion of the Company." Ct. Ex. B at 1 (emphasis added). The Engagement Contract specified that Goldman's advice was "*exclusively* for the information of the Board of Directors and senior management of the Company," and could not be disclosed to any third-party absent Goldman's explicit consent. Ct. Ex. B at 4 (emphasis added).

In an Annex to the Engagement Contract, Dragon agreed to exculpate and hold Goldman harmless in connection with the engagement except for the "gross negligence, willful misconduct or bad faith of Goldman Sachs in performing the services that are the subject of this letter." Ct. Ex. B at 7. Although not a party to the overall contract, Janet Baker (but not James Baker) signed as a "STOCKHOLDER" to signify her agreement "ONLY AS TO THE FIFTH SENTENCE OF ANNEX A" (capitalization in original). In that fifth sentence, in her capacity as a "stockholder" of Dragon, she exculpated Goldman from liability to Dragon or to her personally, or to "any person asserting claims on behalf of or in right of the Company . . . except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Company result from the gross negligence, willful misconduct or bad faith of [Goldman] in performing the services that are the subject of this letter." Ct. Ex. B at 7.

On June 7, 2000, L&H acquired Dragon by merger. Ct. ¶ 4. In exchange for their interests in Dragon, the Bakers received 5,109,713 shares of L&H. Ct. ¶ 4. Several months

later, in November 2000, L&H announced that it expected to restate its financial statements for 1998, 1999 and the first half of 2000, as $277 million in revenue had been improperly reported. Ct. ¶¶ 138, 140. L&H subsequently filed for bankruptcy and eventually announced that in addition to the $277 million previously identified as misreported, "an additional $96 million of income had been reported which did not exist." Ct. ¶¶ 141, 143.

## THE BAKERS' COMPLAINT

Over the past decade, the Bakers have filed multiple lawsuits against multiple defendants in connection with the L&H merger.[4] In none of those actions did the Bakers name any Goldman Sachs entity as a defendant.

On November 18, 2008 – more than eight years after the merger between Dragon and L&H – the Bakers commenced this lawsuit in the Superior Court for Middlesex County, Massachusetts alleging nine causes of action: breach of fiduciary duty (Count I); violation of Massachusetts' unfair trade practices statute (Count II); breach of contract (Count III); breach of contract/third-party beneficiary (Count IV); breach of the implied covenant of good faith and fair dealing (Count V); negligence (Count VI); negligent misrepresentation (Count VII); intentional misrepresentation (Count VIII); and gross negligence, willful misconduct, and bad faith (Count IX).[5]

The Bakers generally attempt to blame Goldman for their decision to exchange their majority interest in Dragon and its intellectual property, allegedly worth hundreds of millions of dollars, for worthless L&H stock. Ct. ¶ 2. Specifically, they claim that "[i]n the Engagement

---

[4]    To date, the Bakers have filed at least four (4) lawsuits against twenty-nine (29) separate defendants. *See Baker v. Dexia, S.A.*, No. 04-10501-PBS (D. Mass. Mar. 11, 2004); *Baker v. Hanvit Bank*, No. 02-08251-MGC (S.D.N.Y. Oct. 17, 2002); *Baker v. Hanvit Bank*, No. 02-10367-PBS (D. Mass. Mar. 4, 2002); *Baker v. KPMG U.S.*, No. 02-10305-PBS (D. Mass. Feb. 21, 2002) (transferred from *Baker v. KPMG U.S.*, No. 01-00380-SLR (D. Del. June 6, 2001)).

[5]    The Bakers entered into a Tolling Agreement with Goldman on July 31, 2002. *See* Ct. Ex. A.

[Contract] . . . Goldman agreed to provide comprehensive financial advice and assistance, including but not limited to searching for an acceptable purchaser or investment partner, assisting in negotiating the financial aspects of the transaction, coordinating site visits, and doing analyses of the value of any potential transaction to Dragon shareholders." Ct. ¶ 17. The Bakers assert that Goldman fell short of that undertaking in several respects.

First, the Bakers contend that Goldman failed to analyze or verify L&H's Asian revenue, its strategic partnerships, its customer relationships, the nature of L&H's alleged growth, and the effect of other acquisitions by L&H, as well as other information concerning L&H. *See* Ct. ¶¶ 64-105. The Bakers also allege that Goldman intentionally and in bad faith reassured them that L&H's representations were accurate. The pleading also alleges that during a March 2000 meeting with Dragon's Board of Directors, Goldman provided a favorable outlook on L&H's prospects that contrasted with reports previously issued by stock analysts at Goldman. *See* Ct. ¶¶ 106-19. Finally, the Bakers claim that Goldman failed to disclose to the Bakers certain alleged conflicts of interests. Among other things, the Bakers claim that Goldman at some unspecified prior time had provided financial advisory services to L&H, *see* Ct. ¶ 120, and in 1999, traded L&H stock, *see* Ct. ¶ 121. Despite these serious accusations, the Complaint does not allege that Goldman provided a fairness opinion endorsing the transaction, or point to any other written documents by Goldman that embody the supposed rosy advice underlying the Bakers' claims.

The sole allegations asserted against The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C. are that they are the general partners of Goldman and are therefore "liable as

such for the debts and liabilities of [Goldman]." Ct. ¶ 7.[6] The Complaint alleges no factual basis for a claim against these entities.

## ARGUMENT

Pursuant to Rule 12(b)(6), a pleading must be dismissed where the allegations "fail[] to state a claim under which relief can be granted." FED. R. CIV. P. 12(b)(6). Conclusory allegations are insufficient. Rather, well-pleaded facts must "nudge" a purported cause of action from the  merely "conceivable" to one that is factually and legally "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007); *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2009) (applying *Twombly*). This Complaint does not meet that fundamental test.

## I. GOLDMAN OWED NO CONTRACTUAL DUTIES TO THE BAKERS UNDER ITS AGREEMENT WITH DRAGON

The Bakers' claims against Goldman all arise out of Goldman's alleged performance of its contract with Dragon. But the Bakers were not parties to that agreement, were not intended beneficiaries of that contract and were owed no duties under it. As a matter of law, the Bakers have no standing to complain about Goldman's performance of a contract to which they were not parties.

The Bakers' claims for breach of contract (Counts III and IV) and for breach of the implied covenant of good faith and fair dealing (Count V) accordingly do not state cognizable causes of action. The Bakers wrongly conflate duties owed to Dragon with duties owed to them individually. But that is incompatible with the Dragon-Goldman Engagement Contract, which

---

[6]      The allegation is false. The Goldman Sachs Group, Inc. is not a general partner of Goldman, Sachs & Co. It is a limited partner.

*negates* all duties except as to Dragon. Under New York law,[7] a plaintiff cannot maintain a cause of action for breach of contract where no contractual relationship exists and the plaintiff is not in privity with the defendant. *See, e.g., M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 515 (N.Y. App. Div. 1998); *Natural Stone Warehouse Inc. v. AKG Yahtim VE Insaat Malzemeiri Sanayi Ve Ticaret A.S.,* No. 46699/07, 2008 WL 4193247, at *3 (N.Y. Sup. Ct. Sept. 15, 2008).

By its terms, the Engagement Contract forecloses any contractual duty to the Bakers. The Engagement Contract makes clear that Goldman was "*exclusively engaged by Dragon Systems, Inc. . . . as financial advisor in connection with the possible sale of all or a portion of the Company.*" Ct. Ex. B at 1 (emphasis added). Furthermore, Goldman's advice was "exclusively" for use by Dragon's Board of Directors and senior management. *Id.* at 4. Although Janet Baker signed the Engagement Contract, she did so only as a stockholder to signify her agreement in that capacity to a single sentence exculpating Goldman from certain liabilities. But nothing in that sentence gave her any rights or imposed any duties owing by Goldman to her. Put simply, the Bakers are not parties to the agreement between Goldman and Dragon, and they accordingly lack standing to complain that contractual duties were somehow owed to them or were breached.

The Engagement Contract also foreclosed the Bakers' ability to assert claims as third-party beneficiaries of the agreement between Goldman and Dragon (Count IV). "It is ancient

---

[7]     The Engagement Contract's choice-of-law provision specifies New York law. *See* Ct. Ex. B at 8. That clause accordingly governs the Bakers' contract claims and the pleading's count for breach of the covenant of good faith and fair dealing, which "sound[s] in contract." *Aisenberg v. Hallmark Mktg. Corp.*, 337 F. Supp. 2d 257, 261 (D. Mass. 2004). It also governs the Bakers' remaining claims, because they are essentially contract claims disguised as torts. The factual allegations for these counts are identical to the allegations ostensibly framing the breach of contract. *See Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*, No. 04-11411-NMG, 2007 WL 4707647, at *3 (D. Mass. Feb. 5, 2007) ("[W]here a breach of contract claim is an essential element of a tort claim, a contractual choice-of-law provision also governs the tort actions arising therefrom.").

law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." *Alusit Ltd. v. Aluglas of Pa.*, No. 89 Civ. 3849, 1990 WL 209422, at *10 (S.D.N.Y. Dec. 4, 1990) (quotations and citation omitted). One is an intended third-party beneficiary:

> if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee *intends* to give the beneficiary the benefit of the promised performance.

*Gupta v. Nat'l Life Ins. Co.*, No. 04-cv-0252E, 2006 WL 2000118, at *3 (W.D.N.Y. July 17, 2006) (applying New York law and citing RESTATEMENT (SECOND) OF CONTRACTS § 302(1)) (quotation omitted) (emphasis added). The parties' intent to benefit the third party must clearly appear on the face of the agreement. *See, e.g., Kolodziej v. Gosciak*, No. 08-cv-251A, 2008 WL 2260601, at *3 (W.D.N.Y. May 30, 2008) (applying New York law).

Here, the Engagement Contract manifests no intent to confer benefits upon the Bakers or Dragon's stockholders. As a threshold matter, where a contract provides that services will run directly to a contracting party, third parties cannot be intended beneficiaries. *See Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*, 138 A.D.2d 446, 449-50 (N.Y. App. Div. 1988). Here, moreover, the Engagement Contract specifically *negates* the required intent. It expressly states that "any written or oral advice provided by [Goldman] in connection with [its] engagement is *exclusively* for the information of the Board of Directors and senior management of [Dragon]." Ct. Ex. B at 4 (emphasis added). Indeed, it provides that Goldman's advice "may not be disclosed to any third party or circulated or referred to publicly without prior written consent." Against this overwhelming contract language, the Bakers identify no provision of the contract evidencing an intent to benefit them. And there is none.

Recently an Illinois court confirmed that under New York law, stockholders were not intended beneficiaries of a substantively identical engagement contract between Goldman and its corporate client. In *Young v. Goldman Sachs & Co.*, No. 08 CH 28542, 2009 WL 247626 (Ill. Cir. Ct. Jan. 13, 2009), the court granted a motion to dismiss stockholders' claims that they were owed contractual and fiduciary duties by Goldman in connection with advice to the Wm. Wrigley Jr. Company ("Wrigley") about its merger with Mars, Incorporated. In *Young* – precisely as here – Goldman's engagement was "exclusively" with the Company. In *Young* – precisely as here – Goldman's duties were solely to the company, its advice was rendered "exclusively for the information of the Board of Directors . . . of the Company" and the advice could "not be disclosed to any third party" without Goldman's consent. Based on those contractual terms, and applying New York law as the contract required, the *Young* court concluded that Wrigley's stockholders had "no privity or relationship with Goldman Sachs." Because they were neither "a party to the Engagement Letter nor . . . a third party beneficiary of the Engagement Letter," the plaintiffs had no standing to pursue any contract-based claim or action for breach of fiduciary duty. There is no principled distinction between *Young* and the facts alleged here.

Finally, absent the privity necessary to maintain a claim for contractual breach, the Bakers cannot maintain a claim under the implied covenant of good faith and fair dealing (Count V). *See Levine v. Yokell*, 258 A.D.2d 296, 296-97 (N.Y. App. Div. 1999) (affirming dismissal of claim for breach of covenant of good faith and fair dealing where no contract existed); *Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. N.Y., Inc.*, 241 A.D.2d 906, 907 (N.Y. App. Div. 1997) (where contract claim is dismissed for lack of privity, there can be no implied covenant of good faith and fair dealing which is based on "the existence of a legal

9

contractual obligation"). Accordingly, the Bakers' contract-based claims (Counts III, IV, and V) must be all dismissed.

## II. GOLDMAN OWED NO EXTRA-CONTRACTUAL DUTIES TO THE BAKERS

The Bakers also purport to allege breaches of common law duties supposedly owed to them by Goldman. They claim that Goldman breached its alleged fiduciary duty to them in the course of its advisory contract with Dragon (Count I). The pleading proceeds to allege that Goldman was negligent and breached a duty of "ordinary care" owed to the Bakers (Counts VI and VII), or was "grossly negligent" in the performance of its contract (Count IX). The pleading conspicuously omits reference to a *source* of such common law obligations. No such source exists.

### A.   *Goldman Owed No Fiduciary Duty to the Bakers*

Fiduciary relationships only exist in limited circumstances. *Locator Servs. Group, Ltd. v. Treas. & Receiver Gen.*, 443 Mass. 837, 853, 825 N.E.2d 78, 93 (Mass. 2005). They arise when one assumes a duty to act or give advice for the benefit of another upon matters within the scope of the parties' relationship. *See Peterson v. Richard*, 71 Mass. App. Ct. 1127, 888 N.E.2d 386, *2 (Mass. App. Ct. 2008) (unpublished table decision); *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co*., 866 N.Y.S.2d 578, 585 (2008).

As a result, in analogous circumstances, courts have unequivocally held that a financial advisor to a corporation owes no fiduciary duty to the company's stockholders. *See Joyce*, 538 F.3d at 802 ("[A corporation's financial advisor in connection with a merger] never owed any contractual nor extra-contractual duty to the Shareholders."); *In re Trump S'holder Derivative Litig.*, No. 96 Civ. 7820, 2000 WL 1371317, at *18 (S.D.N.Y. Sept. 21, 2000) (a board's financial advisor in connection with a deal owed no fiduciary duties under Delaware law to

stockholders).    In particular, where an "[investment bank's] retention . . . letter[] . . . unambiguously establish[es] that [the investment bank's] duties ran exclusively to [the corporation], not the plaintiffs as individual investors," the stockholders cannot demonstrate that the investment bank owed them any duty whatsoever, much less a fiduciary duty.  *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650-51 (7th Cir. 2006); *see also Young*, No. 08 CH 28542, 2009 WL 247626.[8]

In *Joyce*, for example, stockholders of Century 21 – including the Chairman of the Board and Century 21's founder and former CEO – alleged that Morgan Stanley owed them a fiduciary duty because the bank knew that stockholders would rely on its fairness opinion when deciding how to vote on a proposed merger.  *Joyce*, 538 F.3d at 799-800; *see also Joyce v. Morgan Stanley & Co., Inc.*, No. 06 C 4754, 2007 WL 967933, at *1 (N.D. Ill. Mar. 29, 2007) (describing plaintiff stockholders' executive positions within Century 21).  The Seventh Circuit affirmed dismissal of the complaint, holding that Morgan Stanley owed no fiduciary duty to the stockholders.  *Joyce*, 538 F.3d at 802.  The language of the engagement contract between Century 21 and Morgan Stanley and the text of the fairness opinion Morgan Stanley delivered were critical to the Court's analysis.  *See id.*  The engagement contract stated that Morgan Stanley "'acted as financial advisor *to the Compan*y in connection with [the] transaction.'"  *Id.*  And the fairness opinion was consistent:  it cautioned that it was exclusively "'*for the information of the Board of Directors*'" and should not be used by stockholders in deciding how to vote on the proposed merger.  *Id.*  The contractual identity of the parties to the agreement, and

---

[8]    The Bakers claim that Goldman failed to disclose certain alleged conflicts of interest that supposedly tainted the advice it gave to Dragon.  Ct. ¶¶ 120-25.  But Goldman and Dragon explicitly agreed to terms that the Bakers – *non*parties to the agreement – now complain supposedly created a conflict.  The Engagement Contract, for example, specifically provides for Goldman to receive a fee partly contingent upon the transaction.  *See* Ct. Ex. B. at 2.  Likewise, the Engagement Contract discloses that Goldman "may from time to time effect transactions, for its own account or the account of customers, and hold positions in securities or options on securities of companies, which may be the subject of the engagement contemplated by this letter."  *Id.* at 4.

the disclaimer that Morgan Stanley's opinion was not intended for any stockholder, together precluded recognition of a fiduciary duty owed to the stockholders. *See id.*; *see also HA2003 Liquidating Trust*, 517 F.3d at 458-59 (investment bank's duties are set by contract).

The same result is required here. Goldman contractually bound itself exclusively to Dragon. By the terms of its engagement, it had no duty to act for or give advice for the benefit to any stockholder, and its advice could not even be disclosed to any such third party without its permission. *See Peterson*, 71 Mass. App. Ct. 1127, 888 N.E.2d at *2; *AG Capital Funding Partners, L.P.*, 866 N.Y.S.2d at 585. To the extent that Janet Baker was privy to Goldman's advice, it was only in her capacity as a corporate representative of Dragon, not as an individual stockholder. *See Massey*, 464 F.3d at 650. Further, like the fairness opinion in *Joyce*, the Engagement Contract explicitly states that Goldman's services would be for the exclusive benefit of Dragon's Board of Directors and senior management, and thus limits that "benefit" to individuals acting in those capacities. This language flatly disclaims any duty to Dragon's stockholders and makes clear that Goldman never intended its advice to be for the benefit of individual stockholders. *See Young*, 2009 WL 247626 (rejecting fiduciary duty claim because "Goldman Sachs never accepted any duty or responsibility to guard the interests of the stockholders as the Engagement Letter specifically states that Goldman Sachs' services would be for the exclusive benefit of the Wrigley board of directors and senior management . . . .").

The law does not lightly impose a "fiduciary" duty. A "fiduciary" relationship is one of special trust and confidence, *Peterson*, 71 Mass. App. Ct. 1127, 888 N.E.2d at *2; *AJW Partners, LLC v. Cyberlux Corp.*, No. 603098/07, 2008 WL 4514171, at *3 (N.Y. Sup. Ct. Sept. 19, 2008), carries with it unique requirements of candor and care, *see generally Joseph v. Shell Oil Co.*, 482 A.2d 335, 341 (Del. Ch. 1984), and arises only when parties bi-laterally agree that the special

strictures of fiduciary obligation will be imposed. Here, the Bakers' attempt to piggy-back on Dragon's relationship with Goldman ignores these fundamental tenets. A fiduciary relationship does not exist simply because the Bakers were present on the scene when Dragon and Goldman struck their bargain, or because Goldman "knew" the Bakers would hear its advice. *Young*, 2009 WL 247626. The Bakers did not stand in Dragon's shoes when the Dragon-Goldman agreement was struck or when it was performed. And they stood only as incidental recipients of the information and advice Goldman rendered to Dragon (which did not even include a fairness opinion). That does not make them beneficiaries of a "fiduciary" relationship. As a matter of law, they were spectators, not players. And they therefore were owed no fiduciary duty.

## B.    *Goldman Owed No Duty of Care to the Bakers*

The Bakers also allege that Goldman acted negligently toward them, and that claim fails for the same fundamental reason. Nothing in the Complaint establishes the requisite duty of care required in cases alleging economic loss, which arises only when there is a privity-like relationship between the plaintiff and defendant, or at the very least an intent by the defendant to provide information for the specific benefit or guidance of the plaintiff.[9]

---

[9]    Claims for negligence, negligent misrepresentation, or gross negligence under New York law require a relationship between the plaintiff and defendant that substantially approaches contractual privity. *See Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt., Inc.*, No. CV-07-715, 2008 WL 1787684, at *4 (E.D.N.Y. Apr. 17, 2008) (negligent-misrepresentation claim requires "a relationship sufficiently approaching privity"); *Walker v. Chiauzzi*, --- N.Y.S.2d ---, 2008 WL 5412309, at *1 (App. Div. Dec. 31, 2008) (dismissing gross negligence claim when there was no privity of contract or functional equivalent thereof). Massachusetts law similarly limits liability for negligence, negligent misrepresentation, or gross negligence in economic-loss cases to persons for whose benefit and guidance the defendant intends to supply information or who the defendant knows that the recipient of the information intends to supply it. *See Nycal v. KPMG Peat Marwick LLP*, 426 Mass. 491, 499, 688 N.E.2d 1368, 1373 (Mass. 1998) (affirming summary judgment for accountants of corporation in action brought by purchaser of controlling interest because accountants' audit report was not for the benefit of plaintiff); *see also Reder v. Travelers Plan Adm'rs of Conn., Inc.*, 44 F. Supp. 2d 92, 97 (D. Mass. 1999) (dismissing negligence and gross negligence claims of president-owner of company against health plan administrator for allegedly incorrect advice rendered to company, distinguishing reliance on advice "in his individual capacity" from capacity as president-owner). In all events, the Complaint's conclusory assertions do not state a claim for gross negligence, which must be so extreme as to contravene acceptable notions of morality. *See infra* note 10.

13

Again, courts that have addressed similar circumstances have consistently held that a financial advisor to a company owes no duty of care to the client's constituencies, such as stockholders, when the engagement contract expressly states that the advisor's only obligations run to the company. *See Meyer v. Goldman, Sachs & Co.*, 234 A.D.2d 129, 130 (N.Y. App. Div. 1996) (dismissing stockholders' complaint against investment advisor to corporation because advisor owed no duty to stockholders); *see also Stuchen v. Duty Free Int'l, Inc.*, No. 94C-12-194, 1996 WL 33167249, at *11-*12 (Del. Super. Ct. Apr. 22, 1996) (Goldman, which was hired to advise corporations in connection with merger, had no duty of care to corporations' stockholders). In *Meyer*, for example, the court stated the general rule that an investment bank retained by a corporate board as its financial advisor is not in privity with the corporation's stockholders and owes the stockholders no duty. 234 A.D.2d at 130. The court concluded that since Goldman and Morgan Stanley had been retained by the corporate board, the investment banks owed no duty to their client's stockholders and therefore could not have been negligent. *Id.*

Pursuant to the Engagement Contract, Goldman's duties ran exclusively to Dragon, the party with which it contracted. Any information provided to Dragon was for the use of the company and not other constituencies such as individual stockholders. *See Ormond v. Anthem, Inc.*, No. 1:05-cv-1908, 2008 WL 906157, at *26 (S.D. Ind. Mar. 31, 2008) (no duty owed to stockholders where fairness opinion, which was delivered to stockholders, stated in part that it was "'solely for information and assistance of Anthem's Board of Directors'"); *see also HA2003 Liquidating Trust*, 517 F.3d at 458-59 (engagement contract between financial advisor and

corporation determines duties owed by advisor). The Bakers cannot now interject themselves between Goldman and Dragon to imply a duty where one never existed.[10]

## III.    THE BAKERS HAVE FAILED TO ALLEGE WITH PARTICULARITY ANY ACTIONABLE MISREPRESENTATIONS BY GOLDMAN

Beyond their duty-based claims, the Bakers assert various intentional and negligent misrepresentation claims (Counts VII and VIII). Those claims are likewise predicated on the erroneous notion that Goldman made representations to them in their individual capacities, and the allegations fail to establish the elements of such claims with the requisite particularity in all events.

First, to the extent any "representations" were made by Goldman, they were made exclusively to Dragon. If the Bakers participated in those communications, they did so as representatives of Dragon, in the course of Goldman's engagement to advise Dragon. *See, e.g.,* Ct. ¶ 46 (memorandum to board), ¶ 52 (memorandum to board), ¶ 53 (memorandum to Dragon), ¶ 57 (memorandum to Dragon), ¶ 109 (teleconference with board), ¶ 110 (teleconference with board), ¶ 111 (board meeting). Thus, any representations made to the Bakers were by definition made to Janet Baker only in her capacity as a board member. That fact "is fatal to the plaintiffs' claims because misrepresentations to investors in their capacity as corporate officers or directors

---

[10]    In addition to the absence of any duty or privity, the Complaint does not begin to allege the kind of conduct that rises to the level of "gross negligence," which must allege behavior so extreme as to contravene acceptable notions of morality. *See Premier-N.Y., Inc. v. Travelers Prop. Cas. Corp.*, 867 N.Y.S.2d 20, 2008 WL 2676800, at *12 (Sup. Ct. 2008) (gross negligence requires a finding of something more than active interference, such as willfulness, maliciousness, or bad faith); *see also Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823-24 (1993) (gross negligence, which differs in kind, not only degree, from ordinary negligence, is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing); *SNS Bank v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (App. Div. 2004) (where factual allegations concern improper, imprudent, or unsuitable conduct by defendant, none of which are sufficient for gross negligence claim, court need not accept as true conclusory allegations that a defendant was grossly negligent or acted willfully, in bad faith or with reckless disregard of its duties).

are wrongs committed against the corporation, not wrongs against the individuals." *Massey*, 464 F.3d at 650.

Second, the Bakers' misrepresentation claims fail in all events to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Misrepresentation claims are subject to the heightened pleading burden of that Rule. *See Freeman v. MetLife Group, Inc.*, 583 F. Supp. 2d 218, 223 (D. Mass. 2008). "Under this heightened standard, a plaintiff must identify the fraudulent statement or representation, the person making the statement, and when the statement was made." *Id.* Here, the allegations by the Bakers fail to identify any specific factual misrepresentations by Goldman. *See, e.g.*, Ct. ¶ 181 (alleging Goldman "provided false assurances and made misrepresentations").

Third, as a substantive matter, under both New York and Massachusetts law, a plaintiff can only maintain a claim for negligent or intentional misrepresentation if he or she can allege that (i) the defendant supplied factual information to the plaintiff, and (ii) the information supplied was false.[11] The Bakers have alleged neither element. While other cases against financial advisers typically are premised on allegedly "false" fairness opinions, Goldman is not alleged to have rendered a fairness opinion in this instance. Accordingly, the Bakers are constrained to rely on a potpourri of facially benign communications that do not begin to suggest fraudulent misrepresentations.

---

[11]    For Massachusetts law, see *Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 341 (D. Mass. 2007) (detailing elements of intentional misrepresentation claim, including that defendant "made a false misrepresentation of material fact"); *In re Fid./Apple Sec. Litig.*, 986 F. Supp. 42, 49 (D. Mass. 1997) ("[M]ere opinions, predictions about future events, and statements that are true when made, are not actionable as misrepresentations under Massachusetts law."); and *O'Connor v. Merrimack Mut. Fire Ins. Co.*, 73 Mass. App. Ct. 205, 213, 897 N.E.2d 593, 600 (Mass. App. Ct. 2008) (detailing elements of negligent misrepresentation, including that defendant "supplied false information for the guidance of others"). For New York law, see *Liberty Mut.*, 2008 WL 1787684, at *3 (intentional misrepresentation claims require a showing of a representation of a material fact that was false); *Brinsights, LLC v. Charming Shoppes of Del., Inc.*, No. 06 Civ. 1745, 2008 WL 216969, at *7 (S.D.N.Y. Jan. 17, 2008) (negligent misrepresentation claims require showing that "the defendant made a false representation"); and *Friedman v. Mohasco Corp.*, 929 F.2d 77, 79 (2d Cir. 1991) (under New York law, misrepresentation claims must be based on a misstatement of fact, not opinion).

16

The Bakers claim, for instance, that Goldman told Dragon that an investment in L&H by Microsoft was a "'major public endorsement[]'" of L&H, that "[n]ew OEM licensees of core technologies . . . build [a] pipeline of recurring revenue," and that L&H had reported "disappointing 3Q 1999 results." Ct. ¶ 47. Such statements amount to little more than "opinions, predictions about future events, and statements that are true when made," which cannot form the basis of a misrepresentation claim. *In re Fid.*, 986 F. Supp. at 49; *see also Friedman*, 929 F.2d at 79. Furthermore, even when the Bakers identify factual assertions allegedly made by Goldman to Dragon, *see* Ct. ¶ 51 (alleging that on December 16, 1999, Goldman provided "specific figures for L&H's earnings per share, revenue, income, and cash and cash equivalents"), they never assert that this or any other specific factual information that is alleged to have been provided by Goldman was false, or was anything other than financial information in the public domain or provided by L&H itself. *Ernest Lawrence Group v. Mktg. the Ams., Inc.*, No. 03 CIV. 1510, 2005 WL 2811781, at *5 (S.D.N.Y. Oct. 27, 2005) (dismissing claims at summary judgment where plaintiff contended that defendant represented several facts to plaintiff but never "alleg[ed] that any of th[o]se statements were false"). The Bakers' misrepresentation claims must accordingly be dismissed.

## IV.    THE BAKERS CANNOT ASSERT A CLAIM UNDER MASS. GEN. LAWS CH. 93A § 11

The Bakers' claim for violation of Chapter 93A, section 11 of the Massachusetts General Laws ("Chapter 93A") fails, as the Bakers' allegations do not warrant relief under that statute. Chapter 93 protects individuals and businesses from unfair and deceptive trade practices by those with whom they engage in commercial business transactions. Specifically, the statute permits claims by "person[s] . . . engaged in the conduct of any trade or commerce" against "person[s] . . . engage[d] in any trade or commerce." MASS. GEN. LAWS ch. 93A, § 11. The statute requires "a

dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a 'business context.'"  *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563, 887 N.E.2d 244, 259 (Mass. 2008).  "[T]he assumed premise that, apart from claims of unfair competition, section 11 applies only *between parties having some transactional business relationship* is consistent with the development of Chapter 93A."  *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 894 (D. Mass. 1991) (emphasis added).

The Bakers do not qualify as persons "engaged in the conduct of any trade or commerce" contemplated by the statute, as no commercial business transaction occurred between the Bakers in their individual capacities and Goldman.  Try as they might to capitalize on their position as stockholders, the only transaction was between Dragon and Goldman.  *See Milliken*, 451 Mass. at 564, 887 N.E.2d at 260 ("[Plaintiff] and the defendants were not 'engaged in trade or commerce' *with each other* and therefore acting in a 'business context.'" (emphasis added)). Indeed, the Bakers' only harm arises from the sale of their personal holdings in Dragon.  *See id.* (whether plaintiff engaged in trade or commerce under Chapter 93A § 11 requires consideration, among other things, of "whether the transaction is motivated by business or personal reasons" (quotations omitted)).  That Janet Baker may have been involved in the merger in her capacity as a board member of Dragon hardly qualifies her or her husband to assert that they themselves were engaged in a direct commercial business transaction with Goldman.  The Bakers' Chapter 93A claim accordingly fails as a matter of law and must be dismissed.[12]

---

[12] The Bakers' Chapter 93A claim also fails because all of the bases they identify in support of that claim – including "deception, intentional misrepresentation, negligent misrepresentation, innocent misrepresentation, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and breach of the duty to speak," Ct. ¶ 158 – fail for the other reasons stated in this memorandum.

## V.     THE BAKERS HAVE NO STANDING TO ASSERT CLAIMS ON BEHALF OF DRAGON

The Bakers' attempt to assert direct claims against Goldman fail for the various reasons discussed above.  Any attempt by the Bakers to assert derivative claims on behalf of Goldman's client, Dragon, likewise fails, as Dragon has ceased to exist.

Delaware law[13] distinguishes between direct and derivative claims by asking "two questions:  Who suffered the alleged harm[,] and who would receive the benefit of any recovery or other remedy?"  *Feldman v. Cutaia*, 951 A.2d 727, 732 (Del. 2008).  When the corporation suffered the alleged harm, and any stockholder recovery would be in proportion to the stockholder's ownership of the corporation's stock, the claim is derivative.  *Id.* at 733.  When the individual stockholder suffered the alleged harm, however, and that harm is independent of any harm suffered by the corporation or other stockholders, the claim is direct.  *Id.* at 732-33.  But "[t]he mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders, does not make a claim direct . . . . [T]he plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large."  *Id.* at 733.

Here, the only harm the Bakers allege flows from financial advice *given to Dragon* by Goldman "[a]s Dragon's exclusive investment banker" for a possible acquisition or merger.  Ct. ¶ 19.  L&H's acquisition of Dragon was a stock-for-stock merger in which the Bakers received 5,109,713 shares of L&H stock in exchange for their Dragon stock.  Ct. ¶ 4.  When L&H's shares subsequently decreased in value, Ct. ¶ 139, so did the value of the Bakers' holdings, *see, e.g.,* Ct. ¶¶ 153, 169, 173, 182 (alleging loss of $300 million interest); *Feldman*, 951 A.2d at 732

---

[13]        Delaware law governs this issue because Dragon was incorporated in Delaware.  *See In re Sonus Networks, Inc.*, 499 F.3d 47, 64 (1st Cir. 2007).  In any event, Massachusetts and New York law also distinguish between derivative and direct claims.  *See generally Dueren v. Credit Suisse First Boston Corp.*, No. 02 CV 3921, 2003 WL 21767509 (S.D.N.Y. July 31, 2003); *Billing v. GTFM, LLC*, 449 Mass. 281, 867 N.E.2d 714 (Mass. 2007).

(claim based on dilution in value of corporation's stock is derivative, not direct claim).[14]  Any recovery by the Bakers would accordingly be in proportion to their ownership of Dragon's stock. Furthermore, they have not alleged any individualized harm suffered by them independent from any harm suffered by the corporation or stockholders at large.

Janet Baker's status as a member of the Board of Directors at the time of the merger, Ct. ¶ 3, and her alleged role "as point person for herself and for James Baker on business and financial aspects of any transaction," Ct. ¶ 15, do not make the Bakers' claims direct.  Indeed, a wrong committed against a stockholder in her capacity as a corporate officer or director is a wrong committed against the corporation, not the stockholder.  *See Massey*, 464 F.3d at 650; *see also Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988) (direct stockholder actions are brought by stockholders for injuries done to them in their individual capacities); *Hirshberg v. Appel*, 266 Mass. 98, 99-100, 164 N.E. 915, 915-16 (Mass. 1929) (wrongs allegedly committed against plaintiff, who was president and largest stockholder of corporation, were wrongs against the corporation, and plaintiff thus had no standing to sue); *New Castle Siding Co. v. Wolfson*, 481 N.Y.S.2d 70, 71 (1984) (negligence of third party affected cross-claimant "in [his] capacity as an officer or employee of the corporation," not as a stockholder, thereby barring direct stockholder action).  Accordingly, Goldman's alleged wrongs to Dragon are irrelevant to and cannot support direct claims for relief by the Bakers.

Absent the ability to sue directly, the only claims the Bakers could potentially assert are derivative claims on behalf of Dragon.  But the Bakers' right to sue derivatively has long been

---

[14]    The Bakers' allegation that they have lost "unique and valuable intellectual property" as a result of the merger, *see, e.g.,* Ct. ¶ 153, is entitled to no weight.  This claim is not supported – and in fact, contradicted  –  by the factual allegations in the Complaint, which repeatedly allege that the Dragon/L&H transaction was a stock-for-stock merger of the two companies.  *See, e.g.,* Ct. ¶ 26 (referring to the "all-stock L&H merger"); Ct. ¶ 38 ("Dragon and Plaintiffs agreed to an all-stock deal with L&H.").  The Bakers have not alleged, nor can they allege, that they gave up personal interests in intellectual property as a result of the merger.

extinguished by operation of law.  Following the completion of a merger, stockholders in an acquired company lack standing to assert derivative claims on behalf of the acquired company. *See Feldman*, 951 A.2d at 731 ("a corporate merger generally extinguishes a plaintiff's standing to maintain a derivative suit," subject to two exceptions not applicable here); *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984) (plaintiff's standing to maintain derivative suit expires following stock-for-stock merger); *Billing*, 449 Mass. at 292-93, 867 N.E.2d at 722-23 (same); *see also Friedman*, 929 F.2d at 79 (plaintiff's standing to maintain derivative suit expires following acquisition).  The Bakers' ability to assert a derivative claim against Dragon has expired.  Because Dragon was acquired by L&H in a stock-for-stock merger, the Bakers are no longer current stockholders of Dragon stock and thus cannot assert a derivative claim on its behalf.

## VI.     THE BAKERS HAVE ALLEGED NO WRONGDOING BY THE GOLDMAN SACHS GROUP, INC. OR THE GOLDMAN, SACHS & CO. L.L.C

The Complaint's only allegations to justify including The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co., L.L.C. as defendants are that these entities are general partners of Goldman.  That is false.  But more important, the pleading attributes no conduct to these ostensible "general partners."  Whatever rights the Bakers may have to enforce any ultimate judgment against Goldman's partners were Goldman to become insolvent, the mere status of those entities as partners is an insufficient basis to include them as defendants.  The absence of factual allegations supporting an inference of misconduct is fatal.[15]

---

[15]     *See Helmsley v. Cohen*, 391 N.Y.S.2d 522, 523 (App. Div. 1977) ("[A]bsent an allegation that the partnership is insolvent . . . no action lies against the partners individually . . . ."); *cf. Meyer v. Park S. Assocs.*, 552 N.Y.S.2d 614 (App. Div. 1990) (allowing tort claim to proceed against general partner due to "legally sufficient allegations" concerning the general partner's "individual actions"); N.Y. PARTNERSHIP LAW §§ 24-26 (McKinney 2005) (partnership jointly and severally liable for "wrongful act or omission" of general partners).

## **CONCLUSION**

For the reasons set forth above, the defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety, with prejudice.

Respectfully submitted,

/s/ John D. Donovan, Jr.
John D. Donovan, Jr. (BBO# 130950)
Annmarie A. Tenn (BBO# 658789)
Matthew L. McGinnis (BBO# 666120)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Telephone:  (617) 951-7000
Fax:  (617) 951-7050

Of Counsel:
Paul Vizcarrondo                         john.donovan@ropesgray.com
Wachtell, Lipton Rosen & Katz            annmarie.tenn@ropesgray.com
51 West 52nd Street                      matthew.mcginnis@ropesgray.com
New York, New York 10019

*Counsel for Goldman, Sachs & Co., The*
*Goldman Sachs Group, Inc. and The*
*Goldman, Sachs & Co. L.L.C.*

February 27, 2009

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 27, 2009.


/s/ John D. Donovan, Jr.
John D. Donovan, Jr.