**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JANET BAKER AND JAMES BAKER,

        Plaintiffs,

    v.

GOLDMAN, SACHS & CO., THE
GOLDMAN SACHS GROUP, INC., and
THE GOLDMAN, SACHS & CO.
L.L.C.,

        Defendants.

Civil Action No. 09-10053-PBS

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

           John D. Donovan, Jr. (BBO# 130950)
           Annmarie A. Tenn (BBO# 658789)
           Matthew L. McGinnis (BBO# 666120)
           ROPES & GRAY LLP
           One International Place
           Boston, MA 02110-2624
           Telephone:  (617) 951-7000
           Fax:  (617) 951-7050

Of counsel:
           john.donovan@ropesgray.com
           annmarie.tenn@ropesgray.com

Paul Vizcarrondo, Jr.
           matthew.mcginnis@ropesgray.com
Won S. Shin
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
           *Counsel for Goldman, Sachs & Co., The*
           *Goldman Sachs Group, Inc. and The*
           *Goldman, Sachs & Co. L.L.C.*

April 22, 2009

## TABLE OF CONTENTS

**Page**

ARGUMENT .............................................................................................................2

I.   THE BAKERS CANNOT REWRITE THE DRAGON-GOLDMAN ENGAGEMENT
     CONTRACT TO SALVAGE THEIR CONTRACT CLAIMS .........................................2

II.  GOLDMAN OWED NO EXTRA-CONTRACTUAL DUTIES TO THE BAKERS ........7

     A.   The Bakers Cannot Base Their Common-Law and Statutory Claims on Their
          Status as Corporate Insiders.......................................................................7

     B.   Goldman Owed No Fiduciary Duty to the Bakers.....................................10

     C.   Goldman Owed No Duty of Care to the Bakers ........................................11

     D.   Goldman Owed No Statutory Duties to the Bakers Under Chapter 93A Because
          There Was No Commercial Business Transaction Between Goldman and the
          Bakers .......................................................................................................13

III. THE BAKERS HAVE NOT ALLEGED WITH SPECIFICITY ANY FACTUAL
     MISREPRESENTATIONS BY GOLDMAN.................................................................14

IV.  THE BAKERS HAVE NO STANDING TO ASSERT DIRECT OR DERIVATIVE
     CLAIMS .....................................................................................................................15

V.   THE GOLDMAN SACHS GROUP, INC. AND THE GOLDMAN, SACHS &
     CO. L.L.C. MUST BE DISMISSED ...........................................................................17

CONCLUSION.......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alford v. Frontier Enters., Inc.*,
  599 F.2d 483 (1st Cir. 1979) ................................................................9

*Bear Stearns & Co. v. Daisy Sys. Corp.* (*In re Daisy Sys. Corp.*),
  97 F.3d 1171 (9th Cir. 1996) ...............................................................10

*Brooks v. Key Trust Co. Nat'l Ass'n*,
  809 N.Y.S.2d 270 (App. Div. 2006) ....................................................10

*CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*,
  270 A.D.2d 138 (N.Y. App. Div. 2000) ...............................................11

*County of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assoc., LP*,
  No. 5:05-cv-926, 2007 WL 838975 (N.D.N.Y. Mar. 19, 2007) ...........17

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
  65 N.Y.2d 536 (1985) ..........................................................................12

*Dowling v. Narragansett Cap. Corp.*,
  735 F. Supp. 1105 (D.R.I. 1990) .........................................................13

*Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*,
  138 A.D.2d 446 (N.Y. App. Div. 1988) .................................................7

*Feldman v. Cutaia*,
  951 A.2d 727 (Del. 2008) ....................................................................15

*HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*,
  517 F.3d 454 (7th Cir. 2008) ..........................................................8, 10

*Helmsley v. Cohen*,
  391 N.Y.S.2d 522 (App. Div. 1977) .....................................................17

*Hirshberg v. Appel*,
  266 Mass. 98, 164 N.E. 915 (1929) ......................................................9

*Hurley v. Fed. Deposit Ins. Corp.*,
  719 F. Supp. 27 (D. Mass. 1989) .........................................................16

*Iannachchino v. Ford Motor Co.*,
  451 Mass. 623, 888 N.E.2d 879 (2008) ...................................................................15

*In re Tyco Int'l, Ltd.*,
  No. 04-cv-1336, 2007 WL 1687775 (D.N.H. June 11, 2007) .................................14

*Joyce v. Morgan Stanley & Co., Inc.*,
  538 F.3d 797 (7th Cir. 2008) ........................................................................8, 11

*Keeney v. Kemper Nat'l Ins. Cos.*,
  133 F.3d 907 (2d Cir. 1998).............................................................................5

*Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP*,
  832 So. 2d 270 (Fla. Dist. Ct. App. 2002) ............................................................16

*Kolodziej v. Gosciak*,
  No. 08-cv-251A, 2008 WL 2260601 (W.D.N.Y. May 30, 2008)............................6

*Kottler v. Deutsche Bank AG*,
  No. 05 Civ. 7773, 2009 WL 55885 (S.D.N.Y. Jan. 9, 2009)..................................11

*M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*,
  247 A.D.2d 515 (N.Y. App. Div. 1998) ...............................................................3

*Mandarin Trading Ltd. v. Wildenstein*,
  851 N.Y.S.2d 71 (Sup. Ct. 2007).......................................................................14

*Manhattan Tops, USA, Inc. v. Kenneth Leventhal & Co.*,
  No. 92-7766-A, 1995 Mass. Super. LEXIS 50 (Super. Ct. Dec. 1995)...................14

*Massey v. Merrill Lynch & Co.*,
  464 F.3d 642 (7th Cir. 2006) ...................................................................8, 9, 11, 14

*McEneaney v. Chestnut Hill Realty Corp.*,
  38 Mass. App. Ct. 573, 650 N.E.2d 93 (1995) ......................................................15

*McIntyre v. Okurowski*,
  717 F. Supp. 10 (D. Mass. 1989) .......................................................................11

*Meyer v. Goldman Sachs & Co.*,
  234 A.D.2d 129 (N.Y. App. Div. 1996) ...........................................................11, 12

*Meyer v. Park South Assocs.*,
  552 N.Y.S.2d 614 (App. Div. 1990) ....................................................................17

*Milliken Co. v. Duro Textiles, LLC*,
  451 Mass. 547, 887 N.E.2d 244 (2008) ...............................................................13

*Nader v. Citron*,
   372 Mass. 96, 360 N.E.2d 870 (1977) ................................................................................15

*Nat'l Bank of Canada v. Hale & Dorr, LLP*,
   17 Mass. L. Rptr. 681, 2004 WL 1049072 (Super. Ct. Apr. 28, 2004) .....................................6

*New Castle Siding Co. v. Wolfson*,
   481 N.Y.S.2d 70 (1984)........................................................................................................9

*New Castle Siding Co. v. Wolfson*,
   97 A.D.2d 501 (N.Y. App. Div. 1983) ..................................................................................3

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) ..............................................10

*Onanuga v. Pfizer, Inc.*,
   No. 03 Civ. 5405, 2003 WL 22670842 (S.D.N.Y. Nov. 7, 2003) ...........................................6

*Ormond v. Anthem, Inc.*,
   No. 1:05-cv-1908, 2008 WL 906157 (S.D. Ind. Mar. 31, 2008) ..........................................7, 8

*Reder v. Travelers Plan Adm'rs of Ct., Inc.*,
   44 F. Supp. 2d 92 (D. Mass. 1999) ......................................................................................12

*Reisman v. KPMG Peat Marwick LLP*,
   57 Mass. App. Ct. 100, 787 N.E.2d 1060 (2003) .................................................................13

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*,
   869 N.Y.S.2d 511 (App. Div. 2008).......................................................................................5

*Rohtstein Corp. v. KPMG LLP*,
   23 Mass. L. Rptr. 333, 2007 WL 4416840 (Super. Ct. 2007)...................................................9

*Schneider v. Lazard Freres & Co.*,
   159 A.D.2d 291 (N.Y. App. Div. 1990) ...........................................................................11, 12

*Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*,
   191 F. Supp. 2d 652 (E.D. Va. 2002) ..................................................................................10

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) .................................................................................................15

*Turano v. Turano*,
   No. 13802/08, 2009 WL 806790 (N.Y. Sup. Ct. Mar. 10, 2009) .............................................3

*U.S. Borax & Chem. Corp. v. Szmokaluk*,
   No. 66 Civ.A.1977, 1981 WL 404963 (Del. Super. Ct. June 23, 1981)....................................3

*Wilson Farm, Inc. v. Berkshire Life Ins. Co.,*
    15 Mass. L. Rptr. 423, 2002 WL 31440151 (Super. Ct. Oct. 31, 2002)...................................10

*Young v. Goldman Sachs & Co.,*
    No. 08 CH 28542, 2009 WL 247626 (Ill. Cir. Ct. Jan.13, 2009) ....................................7, 8, 12

*Z Auction v. Salomon Smith Barney, Inc.,*
    No. B147576, 2002 WL 1732526 (Cal. Ct. App. July 25, 2002) ...........................................10


**STATUTES**

MASS. GEN. LAWS ch. 93A ...........................................................................................................13

N.Y. P'SHIP LAW § 26 ..................................................................................................................17


**OTHER AUTHORITIES**

FED. R. CIV. P. 9(b) .....................................................................................................................14

Ted J. Fiflis, *Responsibility of Investment Bankers to Shareholders*, 70 Wash. U. L.Q.
    497 (1992)..................................................................................................................................12

WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE
    CORPORATIONS (perm. ed., rev. vol. 1990)................................................................................3

The plaintiffs insist that Goldman, Sachs & Co. ("Goldman") is the true culprit who caused them to lose their life's investment in Dragon Systems ("Dragon"). They claim that Goldman owed them contractual and other direct duties in their personal capacities transcending Goldman's engagement by Dragon, that Goldman misled them, performed shoddy advisory work, and betrayed their trust. If that is all to be believed, one wonders why the Bakers relentlessly pursued claims against twenty-nine other parties for the past eight years and only turned to Goldman as a last resort once those avenues were exhausted. The short answer is that despite the Opposition's rhetoric about Goldman's alleged lapses, nothing in that response establishes how Goldman's contractual advisory assignment with Dragon extended to the Bakers *personally* or gave rise to duties owed to them *in their individual capacities*, foreclosing these last-ditch claims as a matter of law.[1]

To contrive their claim against Goldman, the Bakers invent an unprecedented legal construct. They claim that Goldman's sweeping duties spring from its "persistent" and "continual" dealings with the Bakers as founders, managers and majority stockholders of a closely held corporation. The Bakers profess entitlement to a privileged status – available to no other stockholder or executive – that accords them rights equivalent to Dragon's. But that ignores elementary principles of contract law, disregards the corporate form, and flouts the specific contractual terms that ran "exclusively" between Goldman and Dragon. As a matter of law, contractual interactions between an investment bank and the officers or shareholders of a corporate client do not confer rights on those individuals. There is no "close corporation" or "persistent dealings" exception to that basic rule. If the Bakers wanted to burden Goldman with independent and direct obligations to them in their personal capacities, they could have

---

[1] This Reply is filed pursuant to the Court's authorization granted at the Scheduling Conference on March 9, 2009.

negotiated for that privilege, added it to the contract, and paid for the additional duties. They did not.

Unable to concoct cognizable contractual and other duties from "continual" contact or status, the Bakers resort to implausible twisting of the contract language and artificial distinctions of the many cases that reject any duty by an investment bank to shareholders of a corporate client. But in the end, the Bakers' self-personification *as* Dragon does not trump the corporate form or the words of the agreement. Those words makes crystal clear that Goldman undertook duties only to Dragon. As a result, no legal basis exists to assert that Goldman owed contractual, common law or statutory duties to the Bakers, and the Complaint must be dismissed for failure to assert a cognizable claim.

## **ARGUMENT**

### I.    THE BAKERS CANNOT REWRITE THE DRAGON-GOLDMAN ENGAGEMENT CONTRACT TO SALVAGE THEIR CONTRACT CLAIMS

The Bakers' Opposition does not dispute that the Dragon-Goldman Engagement Contract by its terms establishes only "the arrangements under which [Goldman] is exclusively engaged *by Dragon* . . . as financial advisor in connection with the possible sale of all or a portion of the Company." Compl. Ex. B at 1. Nor does the Opposition contend that the contract on its face (or any other document, for that matter) expressly provides for Goldman's engagement as the Bakers' personal financial advisor, or that they personally paid Goldman for any services. Nonetheless, the Opposition insinuates that the Bakers are party to the Goldman-Dragon contractual relationship on the basis of a contorted interpretation of the contract, their alleged persistent "direct dealings" and communications with Goldman, and purported third-party beneficiary rights.

Officers, directors, and stockholders are not the corporation *qua* corporation – no matter how much they identify themselves with the entity and regardless of the extent of their personal holdings. The Bakers' arguments simply ignore both their individual capacity and the corporate form. *See M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 515 (N.Y. App. Div. 1998); *New Castle Siding Co. v. Wolfson*, 97 A.D.2d 501, 502 (N.Y. App. Div. 1983) ("The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation."), *aff'd*, 63 N.Y.2d 782 (1984); *Turano v. Turano*, No. 13802/08, 2009 WL 806790, at *3 (N.Y. Sup. Ct. Mar. 10, 2009) ("Since [plaintiff, the administrator of a decedent's estate,] is not a party to the contract [entered into by the estate and that is] alleged to have been breached, her cause of action for breach of contract is dismissed. . . . [T]he fact that she is the [a]dministrator of the [e]state . . . a party to the contract, does not give her the right to sue in her individual capacity.").[2]

The Opposition advances no plausible contention that the Bakers negotiated to deviate from these fundamental corporate principles or for Goldman to undertake duties to them personally. The Bakers' only attempt to suggest that the contract so provides – or at least to generate an issue of fact sufficient to withstand dismissal – is based upon a tortuous interpretation of the single word "you" that appears in the agreement's second sentence, which after confirming Goldman's retention by Dragon recites that Goldman will "provide *you* with

---

[2]     *See also U.S. Borax & Chem. Corp. v. Szmokaluk*, No. 66 Civ.A.1977, 1981 WL 404963, at *5 (Del. Super. Ct. June 23, 1981) ("A stockholder cannot sue on a corporate contract, to which he is not a party, unless he qualifies as a third-party beneficiary under the contract."); 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 29, at 544 (perm. ed., rev. vol. 1990) ("[A] shareholder, even a principal or sole shareholder, has no individual cause of action against another who has a contract with the corporation unless there is some indication that an independent duty exists between the shareholder and the other party.").

financial advice and assistance in connection with this potential transaction."  Compl. Ex. B. at 1 (emphasis added).  They contend that by using the word "*you*" in that one sentence – instead of *Dragon* or *the Company* – Goldman assumed obligations not only to Dragon but "to the majority shareholders and founders who controlled Dragon's destiny."  Opp. at 19.

That argument exaggerates the word "you" into a significance it cannot bear.  More importantly, it interprets "you" to mean "the Bakers" in a way that contradicts the rest of the Engagement Contract, including: (i) the preceding sentence, which states that Goldman "[was] exclusively engaged by Dragon," Compl. Ex. B at 1; (ii) the express limitation that Goldman's advice "[was] exclusively for the information of the Board of Directors and senior management of the Company," *id.* at 4;[3] (iii) the requirements that "the Company" pay Goldman's fees and that "[y]ou . . . reimburse quarterly Goldman for its expenses," *id.* at 1, 4; (iv) the requirement that Goldman's services "continue after control is obtained to assist you with a second step merger or similar transaction," *id.* at 3; (v) the execution of the agreement on behalf of Dragon "[b]y" its Chief Financial Officer, *id.* at 5; (vi) the inclusion of three separate members of the Dragon management team as addressees, *id.* at 1; and (vii) the execution of the agreement by Janet Baker as to one sentence only as "stockholder."  The Bakers' belated contention that "you" means Janet Baker "as stockholder" – but *also* the Company, its managing officers, and *James* Baker to boot (who signed nothing and also personally paid nothing) – is accordingly untenable.

A contract is ambiguous only if it is capable of multiple reasonable interpretations.  The Bakers' singular reliance on the word "you" in one of the several places it appears in the contract to fashion an argument for their inclusion in the agreement's terms is facially not reasonable.

---

[3]    Contrary to the Bakers' claim, Opp. at 19, the fact that the Engagement Contract limits the transmission of Goldman's advice to Dragon's board and senior management – which did not at the time include James Baker – hardly means that Goldman had agreed to represent and advise each of these directors and officers personally and with respect to their personal investment decisions.

*See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 869 N.Y.S.2d 511, 516-17 (App. Div. 2008) ("[C]lear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations."); *Keeney v. Kemper Nat'l Ins. Cos.*, 133 F.3d 907, at *1 (2d Cir. 1998) (unpublished table decision) ("The construction of an unambiguous agreement is a matter of law for the court, and the court is not required to find the language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." (citation, quotation marks, and brackets omitted)).

Had the contracting parties wanted to contractually embrace the Bakers in their stockholder or personal capacities, they clearly could have done so. Nothing makes this more evident than Janet Baker's actual signature on the Engagement Contract, but only as a "stockholder" and only as to the contract's exculpatory clause, found in the fifth sentence of Annex A. Compl. Ex. B at 7. That provision underscores that the contracting parties were precise and intentional in addressing how and when the contract related to the Bakers individually. Despite securing Janet Baker's agreement as to that exculpation, the contract provided no affirmative rights in favor of the Bakers.

Nonetheless, as with their contortion of the word "you," the Bakers try to extrapolate contractual rights from the exculpation provision. They reason that because this clause addresses only *claims brought by or on behalf of Dragon*, it implicitly authorizes them to assert direct claims. *See* Opp. at 20. To the contrary, Dragon shareholders lacked standing to assert claims against Goldman in their own right under settled law. There was accordingly no reason to address direct claims in an exculpation clause. But because corporate claims could be asserted by Dragon itself as Goldman's client, or *derivatively on its behalf*, the exculpatory clause

extended to derivative claims by stockholders "by or on behalf of Dragon." Goldman secured Janet Baker's assent to the exculpation clause since the Bakers were presumptively the principal stockholders who might conceivably try to assert such derivative claims. It follows that the only reasonable construction of that clause is a limitation on the Bakers' ability to pursue derivative claims in the name of *Dragon;* but that limitation is not tantamount to a *sub silentio* authorization for the Bakers to bring direct claims that are otherwise not recognized at law and nowhere authorized in the exculpation clause or elsewhere in the contract.

Aside from its sophistic attempt to rewrite the contract's actual words, the Opposition proposes to elevate the Bakers to "party" status through surplus allegations recounting numerous communications between Goldman and the Bakers. *See, e.g.*, Opp. at 19. Repeated contacts with corporate officials and shareholders do not substitute for the basic requirements of contract. The scope, frequency or extent of communications do not replace offer, acceptance and consideration.

The Bakers' attempt to manufacture a third-party-beneficiary claim fares no better. A party only has a third-party-beneficiary claim when the underlying contract expressly evidences the specific intent to benefit a third party. *See Onanuga v. Pfizer, Inc.*, No. 03 Civ. 5405, 2003 WL 22670842, at *4-*5 (S.D.N.Y. Nov. 7, 2003); *see also Kolodziej v. Gosciak*, No. 08-cv-251A, 2008 WL 2260601, at *3 (W.D.N.Y. May 30, 2008).[4] Thus, the Bakers' references to extrinsic circumstances are irrelevant. *Cf.* Opp. at 21. Here, the Engagement Contract not only lacks any affirmative indication that the Bakers are intended beneficiaries, but expressly negates that possibility by limiting the advice and assistance Goldman provided to those acting on behalf

---

[4]     The Engagement Contract is governed by New York law. Mem. at 7 n.7. Thus, *Nat'l Bank of Canada v. Hale & Dorr, LLP*, 17 Mass. L. Rptr. 681, 2004 WL 1049072 (Super. Ct. Apr. 28, 2004), cited by the Bakers, Opp. at 21, is inapplicable. Furthermore, *Nat'l Bank of Canada* considered only whether a law firm's opinion letter in which it made express representations to a third-party bank could give rise to a third-party beneficiary claim by the bank against the law firm.

of Dragon. *See* Compl. Ex. B at 4.[5] The Bakers cannot convert their access to that advice as representatives of Dragon into a personal third-party beneficiary claim.

## II. GOLDMAN OWED NO EXTRA-CONTRACTUAL DUTIES TO THE BAKERS

Beyond its claim that the Bakers were unnamed contract parties, the Opposition contends that the same allegations of insider status and persistent interaction support the creation of duties by Goldman under common law and statutory theories, despite the myriad cases rejecting the principle.

### A. *The Bakers Cannot Base Their Common-Law and Statutory Claims on Their Status as Corporate Insiders*

Recognizing the general rule that shareholders are not in privity with a company's financial advisor, the Bakers initially propose a special standing exception in light of their position as founders and board members of Dragon. The Bakers claim a position that is superior to "ordinary shareholders," Opp. at 23; *see also* Opp. at 14 n.13, 22, and they assert that their self-proclaimed exalted status entitles them to bring direct claims for breaches of duties because

---

[5]     *Young v. Goldman Sachs & Co.*, No. 08 CH 28542, 2009 WL 247626 (Ill. Cir. Ct. Jan. 13, 2009), likewise rejected a third-party beneficiary theory under New York law where the Engagement Contract expressly limited Goldman's advice to the company and its management. The Bakers' attempt to distinguish *Young* fails. *See* Opp. at 22. First, although it is true that in *Young* the fairness opinion expressly disclaimed any recommendation regarding how stockholders should vote on the merger, that fact is insignificant here because Goldman never prepared or issued a fairness opinion to Dragon's shareholders. Second, the fact that the Bakers were Dragon's controlling shareholders rather than "ordinary stockholders" cannot alter the plain language of the Engagement Contract, which undoubtedly limited Goldman's duties to Dragon and its management. *See Young*, 2009 WL 247626 (relying only on the language of the contract and fairness opinion to reject third-party beneficiary theory). Furthermore, for the same reasons set out infra Part II.A, it would be incongruous to grant the Bakers additional rights solely because of their status as corporate insiders.

Furthermore, contrary to the Bakers' contention, the face of a contract can reflect a disclaimer of third-party rights even in the absence of a provision that "expressly negates enforcement by third parties." Opp. at 22 (brackets and quotation marks omitted). Rather, where a contract clause "provides that [one party's] services would run directly to the [other party]," it is "clear that the plaintiff was merely an incidental beneficiary of the services to be performed by [the contracting defendant]," thereby precluding it from claiming third-party beneficiary status. *Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*, 138 A.D.2d 446, 450 (N.Y. App. Div. 1988). Here, the Engagement Contract provided that "any written or oral advice provided by Goldman Sachs . . . is exclusively for the information of the Board of Directors and senior management of the Company," making it "clear that the [contracting] parties did not intend to benefit any other persons." *Ormond v. Anthem, Inc.*, No. 1:05-cv-1908, 2008 WL 906157, at *28 (S.D. Ind. Mar. 31, 2008) (applying New York law).

they were the instruments through which Goldman delivered its advice and information to the company.[6]

The law rejects the possibility of such an "insider" entitlement. As the Seventh Circuit has noted, "[I]t would be a curious – and unfair – result if, as the plaintiffs argue, corporate insiders were permitted to maintain direct actions that 'ordinary shareholders' could not bring." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 651 (7th Cir. 2006). Like the instant case, the court in *Massey* considered claims brought by corporate insiders against an advisor to the corporation for alleged fraud and breach of fiduciary duty. Like the Bakers, the plaintiffs in *Massey* contended "that they, unlike 'ordinary shareholders,' acted in reliance on [an investment bank's] alleged fraudulent communications," including a board presentation they attended. *Id.* Like *Massey*, this Court should reject the Bakers' claim that information communicated to them in their capacity as corporate insiders can give rise to a direct shareholder action against Goldman. *See id.*[7]

---

[6]    The Bakers' common-law and statutory claims are not premised on any Goldman statement, such as a fairness opinion, alleged to have been transmitted to Dragon shareholders. Their effort to distinguish cases involving fairness opinions as somehow irrelevant is, furthermore, illogical. Those cases make clear that even when an investment bank's advice has been communicated directly to shareholders, the shareholders' arguments that the investment banks owe them common-law duties are still meritless. *See Joyce v. Morgan Stanley & Co., Inc.*, 538 F.3d 797 (7th Cir. 2008); *HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*, 517 F.3d 454 (7th Cir. 2008); *Massey v. Merrill Lynch & Co.*, 464 F.3d 642 (7th Cir. 2006); *Ormond*, 2008 WL 906157; *Young*, 2009 WL 247626.

[7]    The Bakers' attempt to distinguish *Massey* on the ground that "the plaintiffs in *Massey* did not allege that the investment bank 'made any misrepresentations to them as individual[s]'" is a plain misreading of that case. Opp. at 16 n.15 (quoting *Massey*, 464 F.3d at 650). The sentence that the Bakers quote actually states: "[T]he plaintiffs also cannot prevail under this theory because the allegations in their complaint, along with the attached exhibits, plainly establish that Merrill Lynch's representations were to the corporation, via its proxy, the Board, and not to the plaintiffs as individual shareholders." The same holds true here: The basis of Goldman's interactions with Janet Baker was Goldman's contractual relationship with Dragon, and Dragon only.

The Bakers similarly claim that *Massey* is inapposite because "Janet Baker was individually relying on everything Goldman was telling her directly on a constant basis." Opp. at 27 n.33. But in *Massey*, the plaintiffs, who, like Janet Baker, were corporate insiders, were also individually relying on information provided by Merrill Lynch. 464 F.3d at 644. The court nonetheless found that allegation irrelevant in light of the fact that that information was learned by the directors in their capacities as corporate representatives.

Indeed, but for the contractual relationship between Goldman and *Dragon*, Goldman would have had no interaction with the Bakers whatsoever. Goldman's only "direct dealings" with the Bakers, Opp. at 2, occurred with them precisely because they were representatives of Dragon. *See Massey*, 464 F.3d at 651; *see also Hirshberg v. Appel*, 266 Mass. 98, 99-100, 164 N.E. 915, 915-16 (1929) (rejecting fiduciary duty and misrepresentation claims of president and majority stockholder for wrongs done to corporation even though plaintiff "knew and trusted" the defendant and "had many dealings" with him); *New Castle Siding Co. v. Wolfson*, 481 N.Y.S.2d 70, 71 (1984).[8]

To uphold the Bakers' claims based upon their alleged superior "insider" status would render Dragon's corporate form irrelevant and disregard the capacity in which the Bakers acted. It was Dragon, not the Bakers, that hired, contracted with, and paid Goldman. The Engagement Contract expressly provides that Goldman "[was] exclusively engaged *by Dragon*," not by Janet Baker, James Baker, or any other person. Compl. Ex. B. at 1 (emphasis added). Having incorporated Dragon as a separate legal entity and operated it under that form, the Bakers cannot now ask this Court to disregard the corporate vehicle to sustain their claims. A shareholder may not "use the corporate form as both a shield and sword at his will." *Alford v. Frontier Enters., Inc.*, 599 F.2d 483, 484 (1st Cir. 1979); *see also Rohtstein Corp. v. KPMG LLP*, 23 Mass. L. Rptr. 333, 2007 WL 4416840, at *3 (Super. Ct. 2007) ("[Plaintiff's] argument is thus an effort to use his relationship to the corporation, and its contracts with KPMG, as both a sword and a shield, aligning himself with the corporation to obtain the benefits of the contracts, but separating himself from it to avoid the damage limitation provision of the contracts. He is not entitled to do

---

[8]    When and where the Bakers' communications with Goldman occurred – *i.e.*, whether directly or at board meetings – is irrelevant. *See* Opp. at 1.

so."). The Bakers' efforts to conflate themselves with Dragon must be rejected, and their common-law and statutory claims must accordingly be dismissed.

### B. *Goldman Owed No Fiduciary Duty to the Bakers*

The Bakers alternatively insist that, despite their lack of privity with Goldman, a fiduciary relationship existed by virtue of their placing trust and confidence in Goldman's expertise. That claim likewise fails as a matter of law.

As the Bakers acknowledge, if their fiduciary-duty claim is "constrained by [the] written agreement[]" at issue in this case, Opp. at 15, it must undoubtedly fail.[9] But where an investment bank has undertaken to specify its duties in a contract, its duties are in fact so constrained by that contract. *See, e.g., HA2003 Liquidating Trust. Credit Suisse Sec. (USA) LLC*, 517 F.3d 454, 458-59 (7th Cir. 2008) (under New York law, duties determined by contract). The Bakers have not set forth factual allegations that Goldman expressly undertook or voluntarily assumed any fiduciary duties, let alone any duties to the Bakers. *See Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272-73 (App. Div. 2006). And as the Bakers' own caselaw makes clear, "[the Bakers] alone, by reposing trust and confidence in [Goldman], cannot thereby transform a business relationship into one which is fiduciary in nature." *Wilson Farm, Inc. v. Berkshire Life Ins. Co.,* 15 Mass. L. Rptr. 423, 2002 WL 31440151, at *8 (Super. Ct. Oct. 31, 2002) (internal quotation marks omitted).

---

[9]     The Bakers misrepresent the relevance of *Bear Stearns & Co. v. Daisy Sys. Corp.* (*In re Daisy Sys. Corp.*), 97 F.3d 1171 (9th Cir. 1996) (applying California law), *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002), *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652 (E.D. Va. 2002) (applying Virginia law), and *Z Auction v. Salomon Smith Barney, Inc.*, No. B147576, 2002 WL 1732526 (Cal. Ct. App. July 25, 2002), all of which only considered whether an investment bank owed common law duties to its client company, not whether it owed personal duties to any individuals acting in management or directorial capacities at those companies. *Cf.* Opp. at 15, 23 n.26.

The Bakers again attempt to avoid the dismissal of their fiduciary duty claim by arguing that their theory is too "fact-laden" to support dismissal at this stage. Opp. at 18. As numerous courts have held, however, the question of whether common-law duties are owed in the first place is a question of law appropriate for resolution on a motion to dismiss. *See, e.g., Joyce*, 538 F.3d at 802 (determining on a motion to dismiss that a corporation's financial advisor in connection with a merger "never owed any contractual nor extra-contractual duty to the Shareholders"); *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773, 2009 WL 55885, at *11-*12 (S.D.N.Y. Jan. 9, 2009) (applying New York law to dismiss claim against financial advisor where "vague allegations fall well short of adequately pleading that a fiduciary relationship existed"); *McIntyre v. Okurowski,* 717 F. Supp. 10, 11 (D. Mass. 1989) (dismissing fiduciary duty claim under Massachusetts law because no fiduciary relationship existed); *CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais,* 270 A.D.2d 138, 139 (N.Y. App. Div. 2000) (affirming dismissal of claim against investment bank where contract contradicted existence of fiduciary relationship). The Bakers' fiduciary duty claim (Count I) must accordingly be dismissed.

## C.   *Goldman Owed No Duty of Care to the Bakers*

The Bakers also cannot dismiss as "unremarkable," Opp. at 24, the well-established principle that defeats their negligence claims – namely, when an investment bank expressly limits the duties it owes to a particular client and those acting on behalf of its client, no duty of care to shareholders arises. *See Meyer v. Goldman Sachs & Co.*, 234 A.D.2d 129 (N.Y. App. Div. 1996); *see also Joyce*, 538 F.3d 797; *Massey*, 464 F.3d 642.[10]  In *Meyer*, the court

---

[10]     *Schneider v. Lazard Freres & Co.*, 159 A.D.2d 291, 291 (N.Y. App. Div. 1990), relied upon by the Bakers, *see* Opp. at 25, involved a shareholder claim against an investment bank that advised a special committee established to represent the especial interests of shareholders. In that unique circumstance, and absent any contractual disclaimer to the contrary, *Schneider* recognized a relationship approaching privity between the

considered a nearly identical shareholder claim for negligence against Goldman and Morgan Stanley, who had been "hired by [the company's] board of directors during a period of declining earnings to explore strategic alternatives *for the company*, including its possible sale." 234 A.D.2d at 130 (emphasis added). In that identical situation, the court concluded that the shareholders had no "relationship substantially approaching privity with [Goldman and Morgan Stanley]," and thus were owed no duty of care. *Id.*[11]

Nothing in the Opposition distinguishes the Bakers' negligence claims from those found deficient in *Meyer*. Here, Goldman was retained exclusively by Dragon (not its shareholders), and the Engagement Contract expressly states that Goldman's advice was solely for Dragon management and board members. Compl. Ex. B at 4. Given that express contractual language, the Bakers cannot establish that Goldman was reasonably aware that any advice it provided for the exclusive use of Dragon would have been used by the Bakers as shareholders. *See Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985); *see also Reder v. Travelers Plan Adm'rs of Ct., Inc.*, 44 F. Supp. 2d 92, 97 (D. Mass. 1999) (rejecting personal claims of president-owner of company for advice given to him by an insurance administrator in

---

investment banks and shareholders that could support a direct claim as an exception to the general rule. *See Schneider*, 159 A.D.2d at 297 (imposing fiduciary duty upon defendant financial advisors because their purpose, like that of the special committee that hired them, "was to advise the shareholders with respect to [the] transaction" at issue).

There is significant uncertainty as to whether *Schneider* even remains good law. *See, e.g.,* Ted J. Fiflis, *Responsibility of Investment Bankers to Shareholders*, 70 Wash. U. L.Q. 497, 506-13 (1992) (describing *Schneider* as "poor precedent" and noting the novelty of the theory). In all events, as *Meyer* made clear, *Schneider*'s relevance is at most limited to cases involving "buyout auction[s]" where the special committee is effectively representing the especial interest of public shareholders, a fact pattern not present here. *See Meyer*, 234 A.D.2d at 130; *accord Young*, 2009 WL 247626 (the "most important" fact about *Schneider* is that a special committee was formed to advise the shareholders, so advisors hired by the committee were actually retained to advise the shareholders).

[11]    The Bakers attempt to distinguish the more than 50 cases cited by Defendants, including *Meyer*, as "inapposite" or "*sui generis*." Opp. at 2, 33 n.41. The Bakers claim that many of Goldman's cases, including those establishing basic propositions of contract law, *see* Opp. at. 18 n.17, are distinguishable simply on the ground that they do not contain detailed recitations of facts. The mere fact that these cases do not contain detailed factual discussions is hardly a basis upon which to refute the well-established legal propositions set forth in those opinions.

his capacity as president-owner and used by him in his individual capacity).[12]  Counts VI and VII

for negligence and negligent misrepresentation must accordingly be dismissed.

> **D.**    ***Goldman Owed No Statutory Duties to the Bakers Under Chapter 93A Because There Was No Commercial Business Transaction Between Goldman and the Bakers***

The Bakers' claim under Mass. Gen. Laws ch. 93A fares no better, because they neither

qualify as persons "engaged in the conduct of any trade or commerce," nor were they engaged in

a commercial business transaction with Goldman.  *See* MASS. GEN. LAWS ch. 93A, § 11; *Milliken*

*Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563, 887 N.E.2d 244, 259 (2008).   In fact, their

Opposition brief studiously avoids identifying the specific transaction that is alleged to have

occurred between the Bakers and Goldman.

Although the Bakers repeatedly cite to *Reisman v. KPMG Peat Marwick LLP*, 57 Mass.

App. Ct. 100, 787 N.E.2d 1060 (2003), that case only undermines their claims.   In *Reisman* the

owners of a family business sued the accountants who represented both them and an acquiring

corporation.   Unlike this case, "no engagement or billing arrangement" existed between the

owners' company and the accountants specifying and limiting the accountants' duties.   57 Mass.

App. Ct. at 105, 787 N.E.2d at 1064.   Instead, the owner of the company considered the

accountants "to be *his* accountants."   *Id.* (brackets omitted and emphasis added).   The Bakers

cannot plausibly make the same assertion that Reisman made:  Janet Baker signed the contract

(so as to acknowledge the exculpation clause) that expressly recited that the only transactional

---

[12]     *Dowling v. Narragansett Cap. Corp.*, 735 F. Supp. 1105 (D.R.I. 1990) (applying Rhode Island law), cited by the Bakers, is distinguishable.  In that case the investment bank provided a fairness opinion that was attached to a proxy statement and delivered to shareholders, none of which occurred here. Because there was no contractual language disclaiming any duty to shareholders, the court concluded that the bank's "assessment was patently intended to guide shareholders in deciding whether to approve the [company's] sale."  *Id.* at 1125.

business relationship was between Goldman and Dragon.[13]  The Bakers' 93A claim (Count II) therefore fails as a matter of law.

## III.    THE BAKERS HAVE NOT ALLEGED WITH SPECIFICITY ANY FACTUAL MISREPRESENTATIONS BY GOLDMAN

In their Opposition, the Bakers persist in failing to identify (much less with the requisite specificity) a single, factual misrepresentation to them in their individual capacities.[14]  They instead point only to purported representations made to them in their capacities as representatives of Dragon.  *See, e.g.,* Compl. ¶ 47 (memorandum to board referring to "pipeline of recurring revenue").[15]  Under the Engagement Contract, Goldman's obligation was to provide "advice" to Dragon and those acting on its behalf, Compl. Ex. B. at 1, and that advice could not be disclosed to third parties.  Such advice provides no basis for the Bakers' personal claims against Goldman. *See Massey*, 464 F.3d at 650; *cf. Mandarin Trading Ltd. v. Wildenstein*, 851 N.Y.S.2d 71, at *3-*4 (Sup. Ct. 2007) (unpublished table decision) (dismissing misrepresentation claims against art appraiser premised on opinion theory in part because "[t]he [a]ppraisal contains no

---

[13]    *Manhattan Tops, USA, Inc. v. Kenneth Leventhal & Co.,* No. 92-7766-A, 1995 Mass. Super. LEXIS 50 (Super. Ct. Dec. 1995), also relied on by plaintiffs, is distinguishable because there the defendant appraisers "intended potential investors, such as the plaintiffs, to be apprised of the 'bottom line' and to rely on their bottom line valuation." *Id.* at *10.  In fact, the  "cover letter to the [appraisers'] Report itself indicates that it was contemplated to be used in support of an application for securing financing." *Id.* at *1, *10.  Here, in sharp contrast, the Engagement Contract demonstrates that Goldman did not intend for any of Dragon's shareholders to rely on the advice it provided to Dragon.

[14]    The Bakers cannot avoid the strictures of FED. R. CIV. P. 9(b) by simply titling Count VII of their Complaint "Negligent Misrepresentation."  Where a negligent-misrepresentation claim sounds in fraud, as the Bakers' claim here does, Rule 9(b) clearly applies.  *Compare In re Tyco Int'l, Ltd.*, No. 04-cv-1336, 2007 WL 1687775, at *8 (D.N.H. June 11, 2007) (negligent-misrepresentation claim subject to Rule 9(b) where plaintiffs alleged that defendants made misrepresentations "with the intent to induce and the expectation of inducing investors . . . to rely upon those statements and with the knowledge that investors . . . would rely upon those statements"), *with* Compl. ¶ 186 ("Goldman knew and/or intended that the limited group of which the Bakers were members would rely on its information, representations, and assurances"), *and* Compl. ¶ 190 ("Goldman's conduct was wanton, willful and egregious and warrants punitive damages").

[15]    The Bakers misquote this provision in their Opposition at 27 by deleting the word "recurring."

acknowledgment that it was intended to assist plaintiff in buying the Painting").[16]  Accordingly,

the Bakers' misrepresentation claims must fail.  Counts VII and VIII must be dismissed.

## IV.    THE BAKERS HAVE NO STANDING TO ASSERT DIRECT OR DERIVATIVE CLAIMS

The Bakers concede that they do not, and could not, bring derivative claims on Dragon's

behalf.  Opp. at 30.  They also have no direct claims because, as they effectively acknowledge,

they have not alleged in their Complaint any individualized harm that would be sufficient for a

direct claim against Goldman.  Opp. at 31 n.40.[17]  The Bakers' only injury alleged in this case

derives from their status as Dragon shareholders.  That injury is insufficient as a matter of law.

*Feldman v. Cutaia*, 951 A.2d 727, 732 (Del. 2008).

This is so even under the caselaw cited by the Bakers.  In *Tooley v. Donaldson, Lufkin &*

*Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004), the Delaware Supreme Court held that in order

to bring a direct claim, (i) "[t]he stockholder's claimed direct injury *must be independent of any*

*alleged injury to the corporation*," and (ii) "[t]he stockholder must demonstrate that *the duty*

*breached was owed to the stockholder*."  *Id.* (emphasis added).  Here, the Bakers have no direct

---

[16]    The Bakers' reliance on *McEneaney v. Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 650 N.E.2d 93 (1995), *see* Opp. at 27 n.32, is misplaced.  In *McEneaney* the court relied on the motion-to-dismiss standard articulated in *Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870 (1977) – since overruled by the Supreme Judicial Court, *see Iannachchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008) – to conclude that a real estate broker's statement that "the [condominium] unit was quiet and that there [were] no noise problems with the unit" to be false in light of the allegation that the broker was "aware of an historical noise and vibration problem in the particular unit being shown to the plaintiff at the time the statements were made, as well as in the building in which the unit exists."  38 Mass. App. Ct. at 576, 650 N.E.2d at 96 (brackets and quotation marks omitted).  Here, in contrast, the Bakers have not alleged that any specific statement made by Goldman turned out to be false, and have identified no specific factual information possessed by Goldman that Dragon and the Bakers did not also have.

[17]    Granting the Bakers leave to re-plead to assert the new allegations they improperly include in their Opposition would be both unjustified and futile.  *Cf.* Opp. at 31 n.40.  That they may have signed non-compete agreements in connection with their employment by Dragon or Lernout & Hauspie ("L&H") is entirely unrelated to Dragon's engagement of Goldman to provide Dragon "financial advice and assistance" for a potential merger, and does not alter the conclusion that the Bakers have no direct claims against Goldman.

claim because their only alleged injuries relate to their equity interest in Dragon, and as recounted above, Goldman owed them no duty.[18]

Shareholders have direct standing to sue only when there are material misrepresentations or omissions *provided to the shareholders* and upon which the shareholders reasonably act. But the Bakers do not allege that any Goldman statements were communicated to Dragon's shareholders; it was hired simply to advise Dragon and its corporate representatives, and it never prepared or delivered a fairness opinion to anyone – including the Board, much less to shareholders. *Cf. Hurley v. Fed. Deposit Ins. Corp.*, 719 F. Supp. 27, 30 (D. Mass. 1989) (permitting direct shareholder claim because "Plaintiffs' complaint alleges more than mere corporate mismanagement. It alleges that the defendants made false statements in the bank's periodic disclosure reports and failed to disclose other material information. These material misrepresentations and omissions are alleged to have caused plaintiffs to buy and sell securities at deceptive prices"); *Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP*, 832 So. 2d 270, 273 (Fla. Dist. Ct. App. 2002) (permitting direct claim by company president against company's auditors under Florida law based on audited financial statements in part because president "relied upon the auditors' conclusion by allowing client to increase the line of credit even though the advance was beyond client's financial means"). The Bakers' Complaint must accordingly be dismissed in its entirety.

---

[18]    The Bakers' Opposition brief alleges for the first time that "*unlike other Dragon shareholders*, [their] shares of the merged company were subject to lock-up agreements." Opp. at 31 (emphasis added). This new assertion is entitled to no weight, as it was never alleged in the Complaint. Further, the assertion is irrelevant. The Bakers' Complaint repeatedly makes clear that the Bakers' alleged damage was the loss of their stock in Dragon, not any restrictions allegedly placed on the L&H stock they received in return. Compl. ¶¶ 153, 159, 169, 173, 177, 182, 189, 197, 206.

## V.    THE GOLDMAN SACHS GROUP, INC. AND THE GOLDMAN, SACHS & CO. L.L.C. MUST BE DISMISSED

The Bakers effectively acknowledge that Goldman's partners, defendants The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C., are, at best, jointly liable for any liability incurred by Goldman in this case.  *See* Opp. at 33 (citing *County of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assoc., LP*, No. 5:05-cv-926, 2007 WL 838975, at *1 (N.D.N.Y. Mar. 19, 2007) (citing N.Y. P'SHIP LAW § 26(a)(2) (partners are liable "[j]ointly for all . . . debts and obligations of the partnership" other than those specified in §§ 24 and 25))).  As a result, the Bakers have no action against Goldman's partners unless and until Goldman's liability is established *and* Goldman becomes insolvent.  *See* Mem. at 21; *Helmsley v. Cohen*, 391 N.Y.S.2d 522, 523 (App. Div. 1977) ("[A partner's] individual assets are chargeable for partnership debts only after the partnership is adjudicated bankrupt, or . . . when the joint or partnership property is insufficient to pay partnership debts and there appears to be no effective remedy without resort to individual property.").[19]   Goldman's partners must therefore be dismissed as parties to this action.

## <u>CONCLUSION</u>

For the reasons set forth above and in Defendants' Memorandum of Law in Support of Their Motion to Dismiss, Defendants respectfully request that their Motion to Dismiss be granted, and that Plaintiffs' Complaint be dismissed in its entirety, with prejudice.

---

[19]    *Meyer v. Park South Associates*, 552 N.Y.S.2d 614 (App. Div. 1990), reaffirmed that "[n]o cause of action lies against an individual partner for violation of a [contract] by the partnership, absent an allegation that the partnership is insolvent or otherwise unable to pay its obligations," *id*. at 616.  Contrary to the Bakers' assertion, the plaintiff in *Meyer* only had a claim against the individual partner because "the complaint allege[d] sufficient acts by the individual defendant to sustain the charges against him." *Id*. at 615. Here, in contrast, the Bakers concede that they have alleged no acts whatsoever by The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C.

Respectfully submitted,

/s/ John D. Donovan, Jr.
John D. Donovan, Jr. (BBO# 130950)
Annmarie A. Tenn (BBO# 658789)
Matthew L. McGinnis (BBO# 666120)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Telephone:  (617) 951-7000
Fax:  (617) 951-7050
john.donovan@ropesgray.com
annmarie.tenn@ropesgray.com
matthew.mcginnis@ropesgray.com

Of Counsel:
Paul Vizcarrondo, Jr.
Won S. Shin
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

*Counsel for Goldman, Sachs & Co., The
Goldman Sachs Group, Inc. and The
Goldman, Sachs & Co. L.L.C.*

April 22, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 22, 2009.


/s/ John D. Donovan, Jr.
John D. Donovan, Jr.