## THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JANET BAKER AND JAMES BAKER,

   Plaintiffs,

  v.

GOLDMAN, SACHS & CO., THE
GOLDMAN SACHS GROUP, INC., and
THE GOLDMAN, SACHS & CO.
L.L.C.,

   Defendants.

Civil Action No. 09-10053-PBS

## ANSWER AND COUNTERCLAIMS OF
## DEFENDANTS-COUNTERCLAIM PLAINTIFFS GOLDMAN, SACHS & CO.,
## THE GOLDMAN SACHS GROUP, INC., AND THE GOLDMAN, SACHS & CO. L.L.C.

Defendants Goldman, Sachs & Co. ("Goldman"), The Goldman Sachs Group, Inc., and

The Goldman, Sachs & Co. L.L.C. (collectively, "Defendants"), for their answer to Plaintiffs'

Complaint, state as follows:

## I.  NATURE OF THIS ACTION

1.  Defendants deny the allegations set forth in Paragraph 1 of the Complaint, except

admit that the first sentence of Paragraph 1 purports to describe Plaintiffs' claims and that

Goldman and Plaintiffs, among others, entered into the Tolling and Document Preservation

Agreement attached as Exhibit A to the Complaint, to which reference is made for its terms.

2.  Defendants deny the allegations set forth in Paragraph 2 of the Complaint.

## II.     PARTIES

3.      Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint, except admit and aver that Janet and James Baker were shareholders and/or executives of Dragon.

4.      Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, except admit and aver that Dragon was based in Massachusetts and engaged in a transaction with L&H whereby Dragon shares were converted into L&H shares, and refer to the transaction documents for their contents.

5.      Defendants deny the allegations set forth in Paragraph 5 of the Complaint, except admit and aver that Goldman is a New York limited partnership and maintains a branch office in Massachusetts.

6.      Defendants deny the allegations set forth in Paragraph 6 of the Complaint, except admit and aver that Goldman is a financial services firm that acted as a financial adviser to Dragon and refer to the public filings of The Goldman Sachs Group, Inc. for a description of the firm and the engagement letter between Goldman and Dragon (the "Engagement Contract") for its contents.

7.      Defendants deny the allegations set forth in Paragraph 7 of the Complaint, except admit and aver that The Goldman, Sachs & Co. L.L.C. is a general partner and The Goldman Sachs Group, Inc. is a limited partner of Goldman.

III.    **GOLDMAN BREACHED ITS LEGAL AND CONTRACTUAL OBLIGATIONS AND DUTIES AS EXCLUSIVE FINANCIAL ADVISOR**[1]

A.    **The Bakers Developed Dragon Into a Market Leader in Speech Recognition**

8.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, except admit and aver that Dragon was engaged in speech recognition software products.

9.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint.

10.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint.

11.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint.

12.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint.

B.    **Goldman's Engagement as Exclusive Financial Advisor**

14.    Defendants deny the allegations set forth in Paragraph 14 of the Complaint, except admit and aver that Goldman sent a proposed Engagement Contract to Dragon in November 1999, and refer to the proposed Engagement Contract for its contents.[2]

15.    Defendants deny the allegations set forth in Paragraph 15 of the Complaint, except admit and aver that Dragon was privately held and that the Bakers were shareholders with attendant rights accorded by the company's governing provisions and applicable law.

---

[1]    In this Answer, Defendants reproduce the headings used by Plaintiffs in their Complaint, but deny all factual allegations and legal conclusions set forth therein.

[2]    Plaintiffs' Complaint is misnumbered and contains no Paragraph 13. Defendants' Answer nevertheless tracks the numbering of Plaintiffs' Complaint.

16.     Defendants deny the allegations set forth in Paragraph 16 of the Complaint, except admit and aver that in December 1999, Goldman was exclusively engaged by Dragon and refer to the Engagement Contract for its contents.

17.     Defendants deny the allegations set forth in Paragraph 17 of the Complaint, except refer to the Engagement Contract for its contents.

18.     The allegations of Paragraph 18 constitute a purported statement of law requiring no response.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 18 of the Complaint.

19.     The allegations of Paragraph 19 constitute a purported statement of law requiring no response.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations set forth in Paragraph 20 of the Complaint.

21.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, except admit and aver that Goldman is a financial services firm that acted as a financial adviser to Dragon, and refer to the public filings of The Goldman Sachs Group, Inc. for a description of the firm and the Engagement Contract for its contents.

22.     Defendants deny the allegations set forth in Paragraph 22 of the Complaint, except admit and aver that Goldman is a financial services firm that acted as a financial adviser to Dragon and refer to the public filings of The Goldman Sachs Group, Inc. for a description of the firm and the Engagement Contract for its contents.

23.     Defendants deny the allegations set forth in Paragraph 23 of the Complaint, except admit and aver that Goldman maintains Business Principles and refers thereto for their contents.

24.     Defendants deny the allegations set forth in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations set forth in Paragraph 25 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

26.     Defendants deny the allegations set forth in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations set forth in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations set forth in Paragraph 28 of the Complaint, except refer to the Engagement Contract for its contents.

**C.     Goldman Did Virtually No Investigation, Research, Or Valuation Analyses of L&H and L&H's Stock And Finances, in Gross Violation Of Its Legal Obligations And Contractual Duties**

29.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint.

30.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

31.     Defendants deny the allegations set forth in Paragraph 31 of the Complaint, except refer to the Engagement Contract for its contents.

32.     Defendants deny the allegations of Paragraph 32 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

33.     Defendants deny the allegations set forth in Paragraph 33 of the Complaint, except admit and aver that Goldman identified questions and areas for investigation with respect to L&H during its engagement by Dragon, some of which Plaintiffs ignored.

34.     Defendants deny the allegations set forth in Paragraph 34 of the Complaint.

35.     Defendants deny the allegations set forth in Paragraph 35 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

36.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations set forth in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations set forth in Paragraph 38 of the Complaint.

39.     Defendants deny the allegations set forth in Paragraph 39 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

40.     The allegations of Paragraph 40 constitute a purported statement of law requiring no response.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 40 of the Complaint.

41.     Defendants deny the allegations set forth in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations set forth in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations set forth in Paragraph 43 of the Complaint.

44.     Defendants deny the allegations set forth in Paragraph 44 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

45.     Defendants deny the allegations set forth in Paragraph 45 of the Complaint, except refer to the referenced document for its contents.

46.     Defendants deny that the allegations set forth in Paragraph 46 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

47.     Defendants deny that the allegations set forth in Paragraph 47 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

48.     Defendants deny the allegations set forth in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations set forth in Paragraph 49 of the Complaint.

50.     Defendants deny the allegations set forth in Paragraph 50 of the Complaint.

51.     Defendants deny that the allegations set forth in Paragraph 51 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

52.     Defendants deny that the allegations set forth in Paragraph 52 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

53.     Defendants deny that the allegations set forth in Paragraph 53 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

54.     The allegations of Paragraph 54 constitute a purported statement of law requiring no response.  To the extent that a response is required, Defendants deny that the allegations set

forth in Paragraph 54 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

55.    Defendants deny that the allegations set forth in Paragraph 55 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

56.    Defendants deny that the allegations set forth in Paragraph 56 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

57.    Defendants deny that the allegations set forth in Paragraph 57 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

58.    Defendants deny the allegations set forth in Paragraph 58 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

59.    Defendants deny that the allegations set forth in Paragraph 59 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

60.    Defendants deny the allegations set forth in Paragraph 60 of the Complaint.

61.    Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

62.    Defendants deny the allegations set forth in Paragraph 62 of the Complaint.

63.    Defendants deny the allegations set forth in Paragraph 63 of the Complaint.

     **1.    Goldman Intentionally Failed to Analyze and Verify L&H's Asian Revenues**

64.     Defendants deny the allegations set forth in Paragraph 64 of the Complaint, except admit and aver that L&H's reported financial performance was a matter of public record available to everyone including Plaintiffs.

65.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

66.     The allegations of Paragraph 66 constitute a purported statement of law requiring no response.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 66 of the Complaint.

67.     Defendants deny the allegations set forth in Paragraph 67 of the Complaint.

68.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 of the Complaint.

69.     Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

70.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 70 of the Complaint.  Defendants deny the allegations set forth in the second and third sentences of Paragraph 70 of the Complaint.

71.     Defendants deny the allegations set forth in Paragraph 71 of the Complaint.

**2.     Goldman Intentionally Failed to Analyze and Verify the Propriety of L&H's Strategic Partnerships and Related Party Revenue**

72.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first and second sentences of Paragraph 72 of the Complaint. Defendants deny the allegations set forth in the third and fourth sentences of Paragraph 72 of the Complaint.

73.     The allegations of Paragraph 73 constitute a purported statement of law requiring no response.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 73 of the Complaint.

74.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 74 of the Complaint.  Defendants deny the allegations set forth in the second sentence of Paragraph 74 of the Complaint.

75.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 75 of the Complaint.  Defendants deny the allegations set forth in the second and third sentences of Paragraph 75 of the Complaint.

76.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 76 of the Complaint.  Defendants deny the allegations set forth in the second and third sentences of Paragraph 76 of the Complaint.

77.     Defendants deny that the allegations set forth in Paragraph 77 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

78.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 78 of the Complaint.  Defendants deny the allegations set forth in the second sentence of Paragraph 78 of the Complaint.

79.     Defendants deny that the allegations set forth in Paragraph 79 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

80.     Defendants deny that the allegations set forth in Paragraph 80 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

81.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 81 of the Complaint.

82.     Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 82 of the Complaint.  Defendants deny the allegations set forth in the second and third sentences of Paragraph 82 of the Complaint.

83.     The allegations of Paragraph 83 constitute a purported statement of law requiring no response.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

### 3.     Goldman Intentionally Failed to Analyze and Verify L&H's Customer Relationships

85.     Defendants deny the allegations set forth in Paragraph 85 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

86.     Defendants deny the allegations set forth in Paragraph 86 of the Complaint.

87.     Defendants deny the allegations set forth in Paragraph 87 of the Complaint.

88.     Defendants deny the allegations set forth in Paragraph 88 of the Complaint.

89.     Defendants deny that the allegations set forth in Paragraph 89 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

90.     Defendants deny the allegations set forth in Paragraph 90 of the Complaint.

91.    Defendants deny that the allegations set forth in Paragraph 91 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

92.    Defendants deny the allegations set forth in Paragraph 92 of the Complaint.

### 4.    Goldman Intentionally Failed to Analyze and Verify Whether L&H's Growth Was Internal or Based on Acquisitions

93.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 93 of the Complaint.

94.    Defendants deny the allegations set forth in Paragraph 94 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

95.    Defendants deny the allegations set forth in Paragraph 95 of the Complaint.

96.    Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

### 5.    Goldman Intentionally Failed to Examine the Effect of the Dictaphone Acquisition

97.    Defendants deny the allegations set forth in Paragraph 97 of the Complaint, except admit and aver that the referenced transaction was a matter of public record and refer thereto for its terms.

98.    Defendants deny the allegations set forth in Paragraph 98 of the Complaint.

99.    Defendants deny the allegations set forth in Paragraph 99 of the Complaint.

### 6.    Goldman Intentionally Failed to Investigate, Research, Review, And Analyze Other Areas of L&H

100.    Defendants deny the allegations set forth in Paragraph 100 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

101.    The allegations of Paragraph 101 constitute a purported statement of law requiring no response. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 101 of the Complaint.

102.    Defendants deny the allegations set forth in Paragraph 102 of the Complaint, except admit and aver that L&H declined to provide access to certain information but that Plaintiffs elected to proceed with the transaction.

103.    Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

104.    Defendants deny the allegations set forth in Paragraph 104 of the Complaint.

105.    Defendants deny the allegations set forth in Paragraph 105 of the Complaint.

**D.      Goldman Intentionally and In Bad Faith Reassured Dragon and the Bakers that L&H's Representations Were Accurate**

106.    Defendants deny the allegations set forth in Paragraph 106 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

107.    Defendants deny the allegations set forth in Paragraph 107 of the Complaint.

108.    Defendants deny the allegations set forth in Paragraph 108 of the Complaint.

109.    Defendants deny that the allegations set forth in Paragraph 109 of the Complaint provide an accurate and complete description of the meeting described, except admit that Goldman representatives participated in a portion of the meeting.

110.    Defendants deny that the allegations set forth in Paragraph 110 of the Complaint provide an accurate and complete description of the meeting described, except admit that Goldman representatives participated in a portion of the meeting.

111.    Defendants deny that the allegations set forth in Paragraph 111 of the Complaint provide an accurate and complete description of the meeting described, except admit that Goldman representatives participated in a portion of the meeting.

112.    Defendants deny that the allegations set forth in Paragraph 112 of the Complaint provide an accurate and complete description of the meeting described, except admit that Goldman representatives participated in a portion of the meeting.

113.    Defendants deny that the allegations set forth in Paragraph 113 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

114.    Defendants deny that the allegations set forth in Paragraph 114 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

115.    Defendants deny that the allegations set forth in Paragraph 115 of the Complaint set forth an accurate and complete description of the matters described, and refer to the referenced memorandum for its contents.

116.    Defendants deny the allegations set forth in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations set forth in Paragraph 117 of the Complaint, except admit and aver on information and belief that Dragon executed a merger agreement with L&H on March 27, 2000, and that the deal between them closed on June 7, 2000.

118.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 118 of the Complaint. Defendants deny the allegations set forth in the second sentence of Paragraph 118 of the Complaint.

119.    Defendants deny the allegations set forth in Paragraph 119 of the Complaint.

### E. Goldman Intentionally Failed to Disclose Conflicts of Interest

120.    Defendants deny the allegations set forth in Paragraph 120 of the Complaint.

121.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 121 of the Complaint.

122.    Defendants deny the allegations set forth in Paragraph 122 of the Complaint.

123.    Defendants deny the allegations set forth in Paragraph 123 of the Complaint.

124.    Defendants deny the allegations set forth in Paragraph 124 of the Complaint, except refer to the bankruptcy court records for their contents.

125.    Defendants deny the allegations set forth in Paragraph 125 of the Complaint.

## IV.    L&H'S MANUFACTURED GROWTH AND REVENUE

126.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 126 of the Complaint, except refer to L&H's published financial statements for their contents.

### A.    L&H's Growth Consisted of Non-Existent License Revenues from "Strategic Partners" It Created

127.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 127 of the Complaint.

128.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 128 of the Complaint.

129.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 129 of the Complaint.

130.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 130 of the Complaint. Defendants deny the allegations set forth in the second sentence of Paragraph 130 of the Complaint.

**B.    L&H's Growth Consisted of Fictitious Revenue from Asia**

131.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 131 of the Complaint.

132.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 132 of the Complaint.

133.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 133 of the Complaint.

134.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 134 of the Complaint. Defendants deny the allegations set forth in the second sentence of Paragraph 134 of the Complaint.

**C.    L&H's Fraud Is Exposed By Telephone Calls To Purported Customers**

135.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 135 of the Complaint.

136.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 136 of the Complaint.

137.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 137 of the Complaint.

**D.    The Magnitude Of The L&H Fraud**

138.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 138 of the Complaint.

139.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 139 of the Complaint.

140.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 140 of the Complaint.

141.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 141 of the Complaint.

142.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 142 of the Complaint.

143.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 143 of the Complaint.

144.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 144 of the Complaint.

145.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 145 of the Complaint.

146.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 146 of the Complaint.

## V.    CAUSES OF ACTION

### COUNT I – Breach of Fiduciary Duty

147.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 146 of the Complaint.

148.    Defendants state that the allegations set forth in Paragraph 148 of the Complaint set forth Plaintiffs' conclusions of law to which no answer is required.  To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 148 of the Complaint.

149.    Defendants deny the allegations set forth in Paragraph 149 of the Complaint, except admit that Goldman is a leading global investment banking, securities and investment management firm that provides a wide range of services worldwide to a substantial and diversified client base.

150.    Defendants deny the allegations set forth in Paragraph 150 of the Complaint, except refer to the Engagement Contract for a complete and accurate statement of Goldman's contractual undertakings.

151.    Defendants state that the allegations set forth in Paragraph 151 of the Complaint set forth Plaintiffs' conclusions of law to which no answer is required.  To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 151 of the Complaint.

152.    Defendants deny the allegations set forth in Paragraph 152 of the Complaint.

153.    Defendants deny the allegations set forth in Paragraph 153 of the Complaint.

Defendants state that the "WHEREFORE" paragraph following Paragraph 153 of the Complaint sets forth Plaintiffs' prayer for relief to which no answer is required.  To the extent a response is required, Defendants deny the allegations in the "WHEREFORE" paragraph following Paragraph 153 of the Complaint and deny that Plaintiffs are entitled to any relief whatsoever.

### COUNT II – Violation of Massachusetts Unfair Trade Practices Statute

154.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 153 of the Complaint.

155.    Defendants state that the allegations set forth in Paragraph 155 of the Complaint set forth Plaintiffs' conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 155 of the Complaint.

156.    Defendants state that the allegations set forth in Paragraph 156 of the Complaint set forth Plaintiffs' conclusions of law to which no answer is required.  To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 156 of the Complaint.

157.    Defendants state that the allegations set forth in Paragraph 157 of the Complaint set forth Plaintiffs' conclusions of law to which no answer is required.  To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 157 of the Complaint.

158.    Defendants deny the allegations set forth in Paragraph 158 of the Complaint.

159.    Defendants deny the allegations set forth in Paragraph 159 of the Complaint.

160.    Defendants deny the allegations set forth in Paragraph 160 of the Complaint.

161.    Defendants deny the allegations set forth in Paragraph 161 of the Complaint.

162.    Defendants deny the allegations set forth in Paragraph 162 of the Complaint.

163.    Defendants deny the allegations set forth in Paragraph 163 of the Complaint.

Defendants state that the "WHEREFORE" paragraph following Paragraph 163 of the Complaint sets forth Plaintiffs' prayer for relief to which no answer is required.  To the extent a response is required, Defendants deny the allegations in the "WHEREFORE" paragraph following Paragraph 163 of the Complaint and deny that Plaintiffs are entitled to any relief whatsoever.

**COUNT III – Breach of Contract**

164.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 163 of the Complaint.

165.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 165 of the Complaint is required.

166.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 166 of the Complaint is required.

167.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 167 of the Complaint is required.

168.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 168 of the Complaint is required.

169.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 169 of the Complaint is required.

Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to the "WHEREFORE" paragraph following Paragraph 169 of the Complaint is required.

**COUNT IV – Breach of Contract/Third Party Beneficiary**

170.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 169 of the Complaint.

171.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 171 of the Complaint is required as to him.  As to Plaintiff Janet Baker, the allegations set forth in Paragraph 171 of the Complaint set forth her conclusions of law to which no answer is required.

To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 171 of the Complaint.

172.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 172 of the Complaint is required as to him.  As to Plaintiff Janet Baker, the allegations set forth in Paragraph 172 of the Complaint set forth her conclusions of law to which no answer is required. To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 172 of the Complaint.

173.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 173 of the Complaint is required as to him.  As to Plaintiff Janet Baker, Defendants deny the allegations set forth in Paragraph 173 of the Complaint.

Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to the "WHEREFORE" paragraph following Paragraph 173 of the Complaint is required as to him.  As to Plaintiff Janet Baker, Defendants state that the "WHEREFORE" paragraph following Paragraph 173 of the Complaint sets forth Plaintiff Janet Baker's prayer for relief to which no answer is required.  To the extent a response is required, Defendants deny the allegations in the "WHEREFORE" paragraph following Paragraph 173 and deny that Plaintiff Janet Baker is entitled to any relief whatsoever.

**COUNT V – Breach of the Implied Covenant of Good Faith and Fair Dealing**

174.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 173 of the Complaint.

175.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 175 of the Complaint is required as to him.  Defendants state that as to Plaintiff Janet Baker, the allegations set forth in Paragraph 175 of the Complaint set forth her conclusions of law to which no answer is required.  To the extent that an answer is required, Defendants deny the allegations set forth in Paragraph 175 of the Complaint.

176.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 176 of the Complaint is required as to him.  As to Plaintiff Janet Baker, Defendants deny the allegations set forth in Paragraph 176 of the Complaint.

177.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 177 of the Complaint is required as to him.  As to Plaintiff Janet Baker, Defendants deny the allegations set forth in Paragraph 177 of the Complaint.

178.    Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 178 of the Complaint is required as to him.  As to Plaintiff Janet Baker, Defendants deny the allegations set forth in Paragraph 178 of the Complaint.

Defendants state that the Court dismissed this claim as to Plaintiff James Baker in its ruling on Defendants' Motion to Dismiss and, as such, no answer to the "WHEREFORE" paragraph following Paragraph 178 of the Complaint is required as to him.  As to Plaintiff Janet Baker, Defendants state that the "WHEREFORE" paragraph following Paragraph 178 of the Complaint sets forth Plaintiff Janet Baker's prayer for relief to which no answer is required.  To

the extent a response is required, Defendants deny the allegations in the "WHEREFORE" paragraph following Paragraph 178 and deny that Plaintiff Janet Baker is entitled to any relief whatsoever.

## COUNT VI – Negligence

179.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 178 of the Complaint.

180.    Defendants state that the allegations set forth in Paragraph 180 of the Complaint set forth Plaintiffs' conclusions of law to which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 180 of the Complaint.

181.    Defendants deny the allegations set forth in Paragraph 181 of the Complaint.

182.    Defendants deny the allegations set forth in Paragraph 182 of the Complaint.

183.    Defendants deny the allegations set forth in Paragraph 183 of the Complaint.

Defendants state that the "WHEREFORE" paragraph following Paragraph 183 of the Complaint sets forth Plaintiffs' prayer for relief to which no answer is required.  To the extent a response is required, Defendants deny the allegations in the "WHEREFORE" paragraph following Paragraph 183 of the Complaint and deny that Plaintiffs are entitled to any of any relief whatsoever.

## COUNT VII – Negligent Misrepresentation

184.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 183 of the Complaint.

185.    Defendants deny the allegations set forth in Paragraph 185 of the Complaint.

186.    Defendants deny the allegations set forth in Paragraph 186 of the Complaint.

187.    Defendants deny the allegations set forth in Paragraph 187 of the Complaint.

188.    Defendants deny the allegations set forth in Paragraph 188 of the Complaint.

189.    Defendants deny the allegations set forth in Paragraph 189 of the Complaint.

190.    Defendants deny the allegations set forth in Paragraph 190 of the Complaint.

Defendants state that the "WHEREFORE" paragraph following Paragraph 190 of the Complaint sets forth Plaintiffs' prayer for relief to which no answer is required. To the extent a response is required, Defendants deny the allegations in the "WHEREFORE" paragraph following Paragraph 190 of the Complaint and deny that Plaintiffs are entitled to any relief whatsoever.

### COUNT VIII – Intentional Misrepresentation

191.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 190 of the Complaint.

192.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 192 of the Complaint is required.

193.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 193 of the Complaint is required.

194.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 194 of the Complaint is required.

195.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 195 of the Complaint is required.

196.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 196 of the Complaint is required.

197.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 197 of the Complaint is required.

198.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 198 of the Complaint is required.

199.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 199 of the Complaint is required.

Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to the "WHEREFORE" paragraph following Paragraph 199 of the Complaint is required.

### COUNT IX – Gross Negligence, Willful Misconduct, And Bad Faith

200.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 199 of the Complaint.

201.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 201 of the Complaint is required.

202.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 202 of the Complaint is required.

203.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 203 of the Complaint is required.

204.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 204 of the Complaint is required.

205.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 205 of the Complaint is required.

206.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 206 of the Complaint is required.

207.    Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to Paragraph 207 of the Complaint is required.

Defendants state that the Court dismissed this claim in its entirety in its ruling on Defendants' Motion to Dismiss and, as such, no answer to the "WHEREFORE" paragraph following Paragraph 207 of the Complaint is required.

## Affirmative Defenses

In addition to their responses to the numbered paragraphs of the Complaint, Defendants hereby set forth the following affirmative defenses to Plaintiffs' claims, each to be considered in the alternative. Defendants reserve the right to add additional affirmative defenses as they may become available.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Goldman performed all contractual obligations that it was required to perform.

### Third Affirmative Defense

Plaintiff Janet Baker's recovery, if any, is barred by her own material breach of the Engagement Contract.

### Fourth Affirmative Defense

The parties failed to agree to all material contractual terms.

### Fifth Affirmative Defense

Plaintiffs' recovery, if any, is barred in whole or in part by the doctrine of unclean hands.

### Sixth Affirmative Defense

Plaintiffs' alleged loss, if any, is the result of intervening and/or superseding causes for which Defendants were not and are not responsible.

### Seventh Affirmative Defense

Plaintiffs' alleged loss, if any, is the result of criminal acts of a third party for which Defendants were not and are not responsible.

**Eighth Affirmative Defense**

Plaintiffs' equitable claims, if any, are barred in whole or in part because Plaintiffs have an adequate remedy at law.

**Ninth Affirmative Defense**

Plaintiffs' recovery, if any, is barred in whole or in part by their failure to mitigate damages.

**Tenth Affirmative Defense**

Plaintiffs' recovery, if any, is barred in whole or in part to the extent that they lack standing.

**Eleventh Affirmative Defense**

Plaintiff Janet Baker's claims are barred, in whole or in part, by her contract with Goldman, as forth in Annex A of the Engagement Contract.

**Twelfth Affirmative Defense**

Plaintiffs' recovery, if any, is barred in whole or in part by their own contributory and/or comparative negligence.

**Thirteenth Affirmative Defense**

Plaintiffs' recovery, if any, is offset in whole or in part by previous settlements and/or judgments with or concerning third parties, including pursuant to N.Y. Gen. Oblig. § 15-108.

**Fourteenth Affirmative Defense**

The Complaint does not plead fraud with the particularity required under Fed. R. Civ. P. 9(b).

### Fifteenth Affirmative Defense

Defendants The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C. are not proper parties to this action.

### Sixteenth Affirmative Defense

Plaintiffs are required to indemnify Defendants as provided in Annex A of the Engagement Contract.

**COUNTERCLAIMS**

Defendants-Counterclaim Plaintiffs Goldman, Sachs & Co., The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C., for their counterclaims, allege, upon knowledge as to their own conduct and otherwise upon information and belief, as follows:

**Preliminary Statement**

1.      Janet Baker and James Baker have filed the complaint in this case (the "Complaint") against Goldman, Sachs & Co. ("Goldman") and, allegedly on principles of vicarious liability, The Goldman Sachs Group, Inc. and The Goldman, Sachs & Co. L.L.C. (collectively, "Defendants-Counterclaim Plaintiffs"), seeking to recoup alleged losses caused by their own relentless determination, in disregard of clear and specific advice repeatedly given by Goldman about the need to perform additional diligence, to push Dragon Systems, Inc. ("Dragon") into a stock-for-stock merger with Lernout & Hauspie Speech Products, N.V. ("L&H") in 2000.  Moreover, the Bakers seek to avail themselves of the benefits of Dragon's contract with Goldman without incurring the contract's burdens.

2.      Dragon engaged Goldman in December 1999 as financial advisor in connection with the possible sale of all or a portion of the company (the "Engagement Contract").  In negotiating the Engagement Contract with Dragon, Goldman made clear that its services would not include rendering any fairness opinion to Dragon concerning any proposed transaction, and the Engagement Contract did not provide for Dragon to pay Goldman for such an opinion.  Janet Baker specifically negotiated to have only Dragon — and not Janet Baker herself or any other Dragon shareholder who stood to benefit from any transaction — engage Goldman.  Moreover, Janet Baker expressly agreed that Goldman would have no liability to her as a Dragon stockholder, and that the only liability Goldman could have with regard to the engagement would

30

be to Dragon itself for gross negligence, willful misconduct or bad faith by Goldman in performing its services under the Engagement Contract.

3.    Dragon's Board of Directors was presented with merger proposals from at least two companies:  (1) Visteon Automotive Systems ("Visteon"), a subsidiary of Ford Motor Company ("Ford"), which proposed paying Dragon shareholders all cash, and (2) L&H, a Belgian company that offered first a combination of cash and stock and eventually only its own stock.  Goldman repeatedly advised the Dragon Board that substantial due diligence should be performed on L&H and detailed specific matters that should be examined carefully.  In particular, Goldman warned the Dragon Board that L&H had grown through multiple acquisitions, raising questions as to the basis and quality of its earnings, and that its financial statements were not prepared in accordance with United States accounting principles.  Goldman is not, and never represented itself to Dragon to be, an accounting expert.  Accordingly, Goldman strongly urged Dragon to engage a major certified public accounting firm with international operations to perform comprehensive due diligence and forensic accounting analysis on L&H.  The Bakers, however, refused to let Dragon follow Goldman's advice because they were predisposed to a transaction with L&H, did not want to incur the expense of the due diligence that Goldman urged, and did not want to delay a potential transaction with L&H.

4.    At least one Dragon Board member favored accepting Visteon's proposal, as it was all cash and, as a Ford subsidiary, Visteon was more of a known quantity.  Janet Baker, however, was both obsessed with doing a transaction with L&H and unsatisfied with the amount that Visteon offered.  She pushed for acceptance of L&H's all-stock proposal notwithstanding its all-stock consideration, Goldman's cautions and reservations concerning L&H, and Dragon's failure to perform the due diligence with regard to L&H that Goldman had urged.  At a meeting

on March 27, 2000, at the Bakers' insistence, the Dragon Board disregarded Goldman's advice concerning due diligence that Dragon should have but never performed on L&H, and accepted L&H's all-stock offer. Consistent with the Engagement Contract that Dragon had negotiated, Goldman did not furnish the Dragon Board with any opinion of the proposed transaction, nor did Goldman recommend the transaction.

5.     Goldman's admonitions were prescient. Before the end of 2000, the L&H financial statements — which Goldman had unsuccessfully urged Dragon to retain accounting experts to investigate — had been exposed as a fraud, and L&H collapsed into bankruptcy and eventually liquidation. The Bakers thereafter pursued multiple lawsuits against multiple parties, including L&H's officers and directors, accountants and financial advisors, seeking recompense for the essentially worthless L&H stock that they had so eagerly accepted for their Dragon shares. As a last resort, and approaching a decade after their agreement with the other Dragon Board members to sell the company to L&H, the Bakers personally filed the Complaint against Defendants-Counterclaim Plaintiffs. They have done so notwithstanding Janet Baker's agreement in the Engagement Contract that Goldman can not be liable to her as a Dragon shareholder, and that its only possible liability could be to Dragon for gross negligence, willful misconduct or bad faith. Moreover, they bring this lawsuit notwithstanding that they flatly disregarded Goldman's advice concerning L&H and propelled the Dragon Board into L&H's embrace even when L&H ultimately refused to offer any cash consideration and despite Goldman's warnings.

6.     Defendants-Counterclaim Plaintiffs are filing herewith their answer to the Bakers' Complaint, denying its material allegations. In addition, Defendants-Counterclaim Plaintiffs assert herein counterclaims against Janet Baker (i) for breach of the terms of the Engagement

Contract, wherein Janet Baker agreed that Goldman would not be liable for the type of claims alleged in the Bakers' Complaint, and (ii) for the indemnification to which Defendants-Counterclaim Plaintiffs are entitled under the Engagement Contract that Janet Baker claims gives her rights against Defendants-Counterclaim Plaintiffs.

### Parties

7.      Defendant-Counterclaim Plaintiff Goldman is a financial services firm and a New York limited partnership.

8.      Defendant-Counterclaim Plaintiff The Goldman Sachs Group, Inc. is a limited partner of Goldman.

9.      Defendant-Counterclaim Plaintiff The Goldman, Sachs & Co., L.L.C. is a general partner of Goldman.

10.     Plaintiff-Counterclaim Defendant Janet Baker was the Chairman of the Board of Directors and a shareholder of Dragon during the period between December 1999 and March 2000 ("the Relevant Period").

11.     Plaintiff James Baker was a shareholder of Dragon during the Relevant Period.

### Jurisdiction and Venue

12.     Defendants-Counterclaim Plaintiffs' counterclaims arise out of the transaction or occurrence that is the subject matter of Plaintiffs' claims and form part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has supplemental jurisdiction over Defendants-Counterclaim Plaintiffs' counterclaims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## Facts

**The Dragon-Goldman Engagement Contract**

14.     In November 1999, Dragon and two of its major stockholders – Janet Baker and Seagate Technologies, Inc. ("Seagate") – participated in discussions with Goldman regarding engaging Goldman to serve as financial advisor in connection with a potential sale of all or a portion of Dragon.

15.     Initial drafts of the Engagement Contract provided that Goldman would be engaged jointly by Dragon, Janet Baker, and Seagate.  These initial drafts:

- Were addressed to Ellen Chamberlain as Dragon's Chief Financial Officer, Janet Baker as Dragon's Chairman of the Board, and Donald Waite as Seagate's Executive Vice President and Chief Administrative Officer.

- Provided that Goldman was engaged "by Dragon Systems, Inc. (the 'Company') and the undersigned stockholders (the 'Stockholders')."

- Provided that Goldman's advice was "exclusively for the information of the Board of Directors and senior management of the Company and the Stockholders."

- Included signature blocks for Ellen Chamberlain on behalf of Dragon, Janet Baker on behalf of Dragon and as a stockholder, and Donald Waite on behalf of Seagate as a stockholder.

16.     Dragon, Janet Baker, and/or Seagate requested that the draft Engagement Contract be modified to provide that Goldman be retained only by Dragon, so as to ensure that Janet Baker and Seagate would not be personally responsible for paying fees to Goldman.  In response to this request, the draft Engagement Contract was modified in several ways:

- Janet Baker's title was removed from the address block.

- The agreement provided that Goldman was engaged "by Dragon Systems, Inc. (the 'Company')," with the reference to stockholders deleted.

- The agreement provided that Goldman's advice was "exclusively for the information of the Board of Directors and senior management of the Company," with the reference to stockholders deleted.

- The agreement was to be signed by Ellen Chamberlain on behalf of Dragon. Janet Baker and Seagate (through Donald Waite) were to sign only as to the fifth sentence of Annex A, a provision limiting Goldman's liability, and only in their capacities as stockholders.

17.    In December 1999, Dragon and Goldman finalized the Engagement Contract.

The final Engagement Contract, dated December 2, 1999:

- Confirmed "the arrangements under which Goldman Sachs & Co. ('Goldman Sachs') [was] exclusively engaged by Dragon Systems, Inc. (the 'Company') as financial advisor in connection with the possible sale of all or a portion of the Company."

- Provided that "any written or oral advice provided by Goldman Sachs in connection with [the] engagement is exclusively for the information of the Board of Directors and senior management of the Company, and may not be disclosed to any third party or circulated or referred to publicly without [Goldman Sachs'] prior written consent."

- Was signed by Ellen Chamberlain, in her role as Chief Financial Officer of Dragon. Janet Baker signed the Engagement Contract as a Dragon "stockholder," "agreeing only as to the fifth sentence of Annex A." Donald Waite, in his role as Executive Vice President and Chief Administrative Officer of Seagate, also executed the Engagement Contract on behalf of Seagate as a Dragon "stockholder," "agreeing only as to the fifth sentence of Annex A." James Baker did not sign the Engagement Contract in any capacity.

18.    The Engagement Contract stated that Goldman would provide Dragon with "financial advice and assistance in connection with this potential transaction, which may include performing valuation analyses, searching for a purchaser acceptable to [Dragon], coordinating visits of potential purchasers and assisting [Dragon] in negotiating the financial aspects of the transaction."

19.    During the negotiation of the Engagement Contract, Dragon sought to include a term obligating Goldman to provide a fairness opinion upon request by Dragon. Goldman refused, however, to commit to provide any opinion to Dragon concerning any proposed transaction. The final Engagement Contract did <u>not</u> provide that Goldman would furnish Dragon with a fairness opinion on any potential sale of all or a portion of Dragon, nor did it provide for Dragon to pay Goldman any fees for such an opinion.

20.     The Engagement Contract further provided that it was Goldman's "firm policy to receive indemnification.  The Company agrees to the provisions with respect to our indemnity and other matters set forth in Annex A which is incorporated by reference into this letter."

21.     Annex A of the Engagement Contract set out, among other things, the agreement's indemnification provisions.  The fifth sentence of Annex A, to which Janet Baker agreed to be bound in her capacity as a Dragon stockholder, provided:

> The Company, Seagate Technology and Janet M. Baker also agree that neither Goldman Sachs nor any of such affiliates, partners, directors, agents, employees or controlling persons shall have any liability to the Company, Seagate Technology, Inc., Janet M. Baker or any person asserting claims on behalf of or in right of the Company in connection with or as a result of either our engagement or any matter referred to in this letter except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Company result from the gross negligence, willful misconduct or bad faith of Goldman Sachs in performing the services that are the subject of this letter.

**The Proposals from Visteon and L&H**

22.     In 1999, prior to Dragon's engagement of Goldman, Dragon had already engaged in direct discussions with at least L&H and Visteon, a subsidiary of Ford, about potential business combinations.

23.     On or about November 9, 1999, Visteon sent Dragon a letter stating its belief that the market value of Dragon was $580 million.  Later, on or about December 10, 1999, Visteon proposed to purchase between 80% and 100% of Dragon, which Visteon still valued at $580 million, payable in cash or in Ford stock, as determined by Visteon.  Thereafter, on or about January 7, 2000, Visteon advised Dragon that it expected to use cash rather than Ford stock as consideration in a potential transaction.

24.     On or about November 12, 1999, L&H sent Dragon a letter setting out a proposal to purchase Dragon at a price between $500 million and $600 million, payable in a combination of cash and L&H stock, with a majority of the purchase price payable in cash.  Subsequent

proposals sent by L&H continued to offer a price between $500 million and $600 million, with an approximately 50-50 mix of cash and L&H stock.

25.    As between Visteon and L&H, at least one Dragon board member, Donald Waite, favored a transaction with Visteon because its offer would be all-cash and, as a Ford subsidiary, Visteon was more of a known quantity than L&H, a Belgian stand-alone software company.  But Janet Baker was predisposed to a transaction with L&H and refused to entertain any open consideration of Visteon's (or any other) proposal.

**The Bakers Ignore Goldman's Recommendations of Due Diligence Concerning L&H**

26.    On or about December 1, 1999 — before Goldman was even officially engaged by Dragon — Goldman prepared a detailed outline of due diligence questions about L&H. Throughout the course of the engagement, Goldman regularly prepared updated lists informing Dragon of the outstanding areas of due diligence on L&H.

27.    Throughout the engagement, Goldman repeatedly advised Dragon of the need to conduct thorough due diligence on L&H before accepting any proposal to sell all or part of Dragon in exchange for L&H stock.  On or about December 14, 1999, a representative of Goldman and representatives of Dragon attended a meeting at L&H's offices in Belgium with representatives of L&H and SG Cowen.  Janet Baker and Ellen Chamberlain attended on behalf of Dragon.  L&H was represented by Pol Hauspie, Jozef Lernout, Roel Pieper, Carl Dammekens, and Allan Forsey.  At this meeting, L&H and its advisors presented information about L&H's financial condition.  The meeting merely heightened Goldman's concerns, which it made clear to Dragon and the Bakers, but the Bakers ignored any advice or admonitions that threatened their preconceived decision to transact with L&H and only L&H.

28.    On or about December 16, 1999, Goldman presented to Dragon's management a set of "Preliminary Discussion Materials" about potential transactions with L&H and Visteon. On or about December 17, 1999, Dragon presented to Dragon's Board of Directors a set of "Discussion Materials for the Board of Directors" about potential transactions with L&H and Visteon.

- These materials included information about both L&H and Visteon.

- In these materials, Goldman advised that there were several potential "issues" in a potential merger with L&H. Among the issues that Goldman identified were the "[v]alue of [L&H's] stock currency[,] [m]ore volatility"; L&H's "[p]ast accounting practices re: R&D write-offs"; "[o]rganic vs. [a]cquisition growth (true health of business)"; "[r]elatively volatile currency plus questions related to the company's ability to raise cash to pay for the acquisition"; and "[l]ess known about acquirer – European vs. US accounting and reporting."

- In these materials, Goldman advised Dragon that the data therein on L&H's financial condition were based on publicly available information (such as analyst reports) and information provided by L&H management.

- In these materials, Goldman provided no opinion about the fairness of a potential transaction with either L&H or Visteon and provided no opinion about whether L&H or Visteon would be a preferred buyer.

29.    Over the next several months, Goldman continued to recommend to Dragon that further due diligence concerning L&H be conducted, but the Bakers prevented Dragon from heeding that advice. Frustrated and concerned that Dragon was walking into an L&H stock-based merger precipitously, on or about February 29, 2000, Goldman sent Dragon and its legal advisors a written memorandum underscoring that there were outstanding "Due Diligence & Accounting Issues" concerning a potential merger with L&H.

- Goldman advised that "there are several areas where we feel greater insight and clarity needs to be gained with respect to both due diligence and accounting. Based on our meeting last week, and our work to date, we would like to re-iterate our point of view that additional due diligence, led by accounting professionals on both sides, is important to gain greater comfort with respect to some of the issues indicated below."

- Goldman further advised that "[o]ur experience shows that companies like Lernout & Hauspie ('L&H'), which grow via acquisition, necessitate an extra level of care at this stage of the process. This only becomes more important as Dragon shareholders and employees are to receive, and in some instances, hold L&H common shares and/or options, as part of the merger consideration. Our recommendation is that Dragon's certified public accountants perform comprehensive due diligence on L&H, side by side with management, Hale & Dorr and Goldman Sachs."

- The memorandum identified several areas whether further diligence was needed. Goldman concluded that "[a]dditional levels of detail and information are not readily and uniformly available beyond the public statements or the Due Diligence book. Therefore, additional research is needed."

The Bakers, however, would hear nothing of it and prevented Dragon from retaining professional accountants and performing the diligence recommended by Goldman in its February 29th memorandum.

30.    On or about March 7, 2000, Goldman sent Dragon and its legal advisors a script for Dragon to use in its negotiations with L&H. Among the points noted in the script is that L&H's "projections, especially 2002E, are more aggressive than our outlook; it has raised several questions; any additional due diligence should also be contingent upon our speaking with the [L&H] people involved in the day-to-day operations." But, again, the Bakers rejected any recommendation that Dragon perform the due diligence Goldman specified in its March 7th call script. Put simply, Janet Baker felt that the additional due diligence recommended by Goldman would be too expensive and would delay a potential transaction with L&H, which the Bakers had already pre-selected.

31.    On or about March 8, 2000, L&H abruptly changed its proposal to acquire Dragon to an all-stock transaction in which the outstanding Dragon shares would be exchanged for 5.4 million L&H shares. The stated reason for L&H's switch from a 50-50 cash/stock offer to an all-stock offer was that its acquisition of another company, Dictaphone, around that time

left L&H with limited cash reserves.  Undeterred, even though Goldman's advice was all the more critical in the context of an all-stock deal, the Bakers pushed forward apace.

32.    On or about March 27, 2000, Dragon's Board of Directors met to discuss the potential transaction with L&H.  Goldman attended this meeting but, as per the Engagement Contract negotiated by Dragon, did not opine as to the fairness of L&H's offer.  Goldman was, in any event, in no position to opine on L&H's offer, as the recent switch from a 50-50 cash/stock offer to an all-stock offer would require Goldman to conduct an analysis that it was not instructed or given the time to perform.  The Bakers never permitted Dragon to perform the due diligence, in particular the accounting due diligence, that Goldman had recommended.  Nevertheless, Dragon's Board of Directors voted to accept L&H's offer at this meeting.

**COUNT I**

**COUNTERCLAIM FOR BREACH OF CONTRACT
AGAINST JANET BAKER**

33.    Defendant-Counterclaim Plaintiff Goldman repeats and realleges the allegations in paragraphs 1 through 32 as if fully set forth herein.

34.    The fifth sentence of Annex A of the Engagement Contract provides:

The Company, Seagate Technology and Janet M. Baker also agree that neither Goldman Sachs nor any of such affiliates, partners, directors, agents, employees or controlling persons shall have any liability to the Company, Seagate Technology, Inc., Janet M. Baker or any person asserting claims on behalf of or in right of the Company in connection with or as a result of either our engagement or any matter referred to in this letter except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Company result from the gross negligence, willful misconduct or bad faith of Goldman Sachs in performing the services that are the subject of this letter.

35.    On December 8, 1999, Janet Baker signed the Engagement Contract, "agreeing only as to the fifth sentence of Annex A."

36.    Goldman has performed all obligations on its part to be performed under the Engagement Contract.

37.    The Complaint filed by Janet Baker and James Baker against Defendants-Counterclaim Plaintiffs includes nine counts:  breach of fiduciary duty; violation of Massachusetts Unfair Trade Practices Statute; breach of contract; breach of contract on a third party beneficiary theory; breach of the implied covenant of good faith and fair dealing; negligence; negligent misrepresentation; intentional misrepresentation; and gross negligence, willful misconduct and bad faith.

38.    This Court dismissed, among other claims, Count VIII of the Complaint, which alleges intentional misrepresentation, and Count IX of the Complaint, which alleges gross negligence, willful misconduct and bad faith.  If the Bakers had filed suit on behalf of and in the right of Dragon, these are the only claims that even arguably would have been permitted by the fifth sentence of Annex A.  But the Bakers did not bring and cannot maintain such a suit.

39.    By filing the instant lawsuit purportedly in her capacity as a former Dragon stockholder, and by maintaining the suit even after the dismissal of the only claims that even arguably would have been permitted by the fifth sentence of Annex A — if the lawsuit had been brought on behalf of and in the right of Dragon — Janet Baker has breached the fifth sentence of Annex A of the Engagement Contract and the implied covenant of good faith and fair dealing implicit in the contract.

40.    As a direct and proximate result of Janet Baker's breach of the fifth sentence of Annex A of the Engagement Contract and of the implied covenant of good faith and fair dealing implicit in the contract, Goldman has suffered substantial damages in an amount to be determined at trial.

## COUNT II

### COUNTERCLAIM FOR CONTRACTUAL INDEMNITY
### AGAINST JANET BAKER

41.    Defendants-Counterclaim Plaintiffs repeat and reallege the allegations in

paragraphs 1 through 40 as if fully set forth herein.

42.    Annex A of the Engagement Contract set out the agreement's indemnification

provisions.  It provided in relevant part:

> In the event that Goldman Sachs becomes involved in any capacity in any action,
> proceeding or investigation brought by or against any person, including stockholders of
> the Company, in connection with or as a result of either our engagement or any matter
> referred to in this letter, the Company periodically will reimburse Goldman Sachs for its
> legal and other expenses (including the cost of any investigation and preparation)
> incurred in connection therewith.  The Company also will indemnify and hold Goldman
> Sachs harmless against any and all losses, claims, damages or liabilities to any such
> person in connection with or as a result of either our engagement or any matter referred to
> in this letter; except to the extent that any such loss, claim, damage or liability results
> from the gross negligence, willful misconduct or bad faith of Goldman Sachs in
> performing the services that are the subject of this letter.  If for any reason the foregoing
> indemnification is unavailable to Goldman Sachs or insufficient to hold it harmless, then
> the Company shall contribute to the amount paid or payable by Goldman Sachs as a
> result of such loss, claim, damage or liability in such proportion as is appropriate to
> reflect the relative economic interests of the Company and its stockholders on the one
> hand and Goldman Sachs on the other hand in the matters contemplated by this letter as
> well as the relative fault of the Company and Goldman Sachs with respect to such loss,
> claim, damage or liability and any other relevant equitable considerations.  The
> reimbursement, indemnity and contribution obligations of the Company under this
> paragraph shall be in addition to any liability which the Company may otherwise have,
> shall extend upon the same terms and conditions to any affiliate of Goldman Sachs and
> the partners, directors, agents, employees and controlling persons (if any), as the case
> may be, of Goldman Sachs and any such affiliate, and shall be binding upon and inure to
> the benefit of any successors, assigns, heirs and personal representatives of the Company,
> Goldman Sachs, any such affiliate and any such person.

43.    Janet Baker claims to be a third-party beneficiary of the Engagement Contract

between Dragon and Goldman.  In the event that Janet Baker is permitted to avail herself as a

third-party beneficiary of the Engagement Contract, she is also subject to the obligations of the

Engagement Contract, including the indemnification provisions of Annex A.

44.    Defendants-Counterclaim Plaintiffs are entitled to and demand indemnification from Janet Baker for any and all losses, costs and expenses, including attorneys' fees and expenses, incurred in defense of this action.

WHEREFORE, Defendants-Counterclaim Plaintiffs respectfully pray that judgment be entered in its favor as follows:

A.    Dismissing all claims in the Plaintiffs' complaint with prejudice;

B.    Granting judgment as to Count I against Janet Baker and awarding damages in an amount to be determined at trial;

C.    Granting judgment as to Count II against Janet Baker and declaring that Defendants-Counterclaim Plaintiffs are entitled to indemnification from Janet Baker for any and all losses, costs and expenses, including attorneys' fees and expenses, incurred in defense of this action;

D.    Awarding Defendants-Counterclaim Plaintiffs their costs of suit, including reasonable attorneys' fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ John D. Donovan, Jr.
John D. Donovan, Jr. (BBO# 130950)
Annmarie A. Tenn (BBO# 658789)
Matthew L. McGinnis (BBO# 666120)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Telephone:  (617) 951-7000
Fax:  (617) 951-7050

Of Counsel:                                john.donovan@ropesgray.com
Paul Vizcarrondo, Jr.                      annmarie.tenn@ropesgray.com
Won S. Shin                                matthew.mcginnis@ropesgray.com
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019                   *Counsel for Goldman, Sachs & Co., The*
                                           *Goldman Sachs Group, Inc. and The*
                                           *Goldman, Sachs & Co. L.L.C.*

October 30, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 30, 2009.

/s/ John D. Donovan, Jr.
John D. Donovan, Jr.