UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
JANET BAKER AND JAMES BAKER,   )
                Plaintiffs     )
                               )
v.                             )Civil Action No. 09-10053-PBS
                               )
GOLDMAN SACHS & CO., et al.,   )
                Defendants.    )
_____)
                               )
ROBERT ROTH and PAUL G. BAMBERG, )
                Plaintiffs     )
                               )
v.                             )
                               )Civil Action No. 10-10932-PBS
GOLDMAN SACHS & CO.,           )
                Defendant and  )
          Third-Party Plaintiff, )
                               )
v.                             )
                               )
JANET BAKER AND JAMES BAKER,   )
          Third-Party Defendants.)
_____)
```

**MEMORANDUM AND ORDER**

October 31, 2012

SARIS, U.S.D.J.

After hearing and review of the record, the Court rules on the motions as follows:

1. Defendant Goldman Sachs & Co.'s ("Goldman") motion for summary judgment on the Baker plaintiffs' claims (Doc. No. 178, 09-cv-10053) is **DENIED**.  Janet Baker asserts that she is a third-

party beneficiary of the Engagement Agreement between Dragon and Goldman, and brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  The Court denied Goldman's motion to dismiss raising this issue in <u>Baker v. Goldman Sachs & Co.</u>, 656 F. Supp. 2d 226, 234-36 (D. Mass. 2009), with which the Court assumes familiarity.

Now, after discovery, Goldman presses the Court to take a new look based on the evidentiary record, arguing that no genuine dispute of material fact exists that Janet Baker was not an intended beneficiary of the Engagement Agreement.  Among other things, Goldman points to testimony by the Bakers' counsel that when Janet Baker rejected the provision that the shareholders guarantee the payment of Goldman's fees, the Engagement Agreement was amended to strike the language in the initial draft that the engagement was for the information of the shareholders (among others).  In its briefs, Goldman also argues that in the Engagement Agreement, the parties agreed that the shareholders would not hold Goldman liable and therefore insisted on the exculpation language in the fifth sentence of Annex A.

While there is evidence which supports defendant's position that Goldman did not intend to benefit shareholders, the plaintiff, Janet Baker, highlights evidence that she was personally addressed in the agreement and that the Goldman analysts considered her to be their client and knew that she was

2

personally relying on their advice.  Janet Baker also point out
that earlier in the litigation, Goldman stipulated that the fifth
sentence of Annex A, which provides the exculpation language[1]
limiting its liability to her, applies only to derivative claims,
not the direct claims presented here.  See Transcript of Oral
Argument at 17 (June 9, 2009)(No. 09-cv-10053).  In light of the
language and circumstances of the contract, the Court concludes
there is a disputed question of fact as to whether defendant
intended to give Janet Baker the benefit of the contract.

Goldman also asks the Court to revisit the viability of the
Bakers' tort claims.  In its earlier ruling, the Court determined
that the plaintiffs brought direct tort claims under established

---

[1]  The fifth sentence of Annex A states:

> The Company, Seagate Technology, and Janet M.
> Baker also agree that neither Goldman Sachs
> nor any of such affiliates, partners,
> directors, agents, employees or controlling
> persons shall have any liability to the
> Company, Seagate Technology, Inc., Janet M.
> Baker or any person asserting claims on
> behalf of or in right of the Company in
> connection with or as a result of either our
> agreement or any matter referred to in this
> letter except to the extent that any losses,
> claims, damages, liabilities, or expenses
> incurred by the Company result from the gross
> negligence, willful misconduct or bad faith
> of Goldman Sachs in performing the services
> that are the subject of this letter.

Baker, 656 F. Supp. 2d at 230.

Massachusetts law against Goldman.   See generally Nycal Corp. v.
KPMG Peat Marwick LLP, 426 Mass. 491, 493 (1998); Former
Shareholders of Victory Distributors, Inc. v. Deloitte & Touche,
LLP, No. 07-5122-BSL1 (Mass. Super. Ct. July 1, 2008).   Because
the claims are not shareholder derivative claims, the fifth
sentence of Annex A does not apply.

     To support its position that the claims are really
derivative in nature, Goldman places heavy reliance on Massey v.
Merrill Lynch & Co., 464 F.3d 642 (7th Cir. 2006), which does
have similar facts.   In Massey, the Seventh Circuit dismissed
plaintiff shareholders' claims because they were "solely
derivative claims."   Id. at 643.   The claims were based on
diminution in stock values caused by defendant Merrill Lynch's
fraudulent statements in a "fairness opinion" to a corporate
board that led to the disastrous purchase of another corporation,
and resulted in a plunge in stock price and bankruptcy.   Id. at
644.   Although holding that the claims of fraud in the fairness
opinion could only be brought on behalf of the corporation under
Indiana law, the Court acknowledged that a plaintiff shareholder
could maintain a direct action where there is "a breach of a duty
owed specially to the stockholder separate and distinct from the
duty owed to the corporation."   Id. at 648 (citing Sacks v.
American Fletcher Nat'l Bank & Trust Co., 279 N.E.2d 807, 811
(Ind. 1972))(internal quotations omitted).   This holding is

consistent with the line drawn in established caselaw.  See generally 12B Fletcher Cyclopedia of the Law of Corporations, § 5921 (rev. perm. ed. 1984)("A shareholder may sue as an individual where the act complained of . . . creates a cause of action in favor of the shareholder as an individual, such as where the act is in violation of duties arising from contract or otherwise, and owed to the shareholder directly.").

Massey is distinguishable on the facts.  The Seventh Circuit highlighted that the opinion letter expressly stated that there was no recommendation to any stockholder as to how a shareholder should vote on the proposed merger, and the plaintiffs in Massey made no allegations that "Merrill Lynch made any misrepresentations to them as individual shareholders."  Id. at 650.  While the line between direct and derivative liability is not always clear, and helpful caselaw sparse and fact-specific, here plaintiffs have asserted that Goldman made negligent and fraudulent statements directly to them to persuade them to vote for a merger and sign the merger agreement in exchange for a hefty fee.  Significantly, Massey did not involve a merger situation where the harmed corporation ceased to exist after the merger to vindicate corporate rights.  At oral argument, Goldman took the position that Lernout & Hauspie, the corporation which Dragon merged into, is the only entity that could have pursued any remedy against Goldman.  However, Lernout & Hauspie is the

corporation that participated in the fraudulent conduct.  In related litigation, the First Circuit held that a bankruptcy trustee of a subsidiary of Lernout & Hauspie would not have his own cause of action.  See Nisselson v. Lernout, 469 F.3d 143, 158 (1st Cir. 2006) (holding in pari delicto defense barred lawsuit because subsidiary "shares the culpability of the fraud's progenitor").

Goldman proclaims vehemently and vigorously that holding it liable to shareholders for negligent or fraudulent misrepresentations made directly to them which induced a vote to merge would violate "basic principles of corporate law." However, even if the harm caused is deemed to be a corporate injury, "the rule that a shareholder cannot sue in his own name for an injury sustained by the corporation is not ironclad." Pagan v. Calderon, 448 F.3d 16, 28 (1st Cir. 2006).  There may be an exception that shareholders may bring a direct lawsuit "if it is absolutely inconceivable that the corporation itself would pursue a claim for the misconduct."  Id.  Here, such an exception surely applies as a contrary ruling would mean Goldman would be immune from tort liability because no corporation could pursue the claim.

Next Goldman parries with the doctrine of judicial estoppel. While previous testimony appears to create some inconsistencies with certain statements made by the Bakers in this lawsuit, the

statements do not "contradict[] clear answers to unambiguous questions in an earlier deposition" and cannot serve as a basis for dismissing the Bakers' claims.  Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 26 (1st Cir. 2002); see also Pyramid Secur., Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991) (stating that the "no contradiction" rule is less likely to apply where the previous testimony took the form of a deposition rather than an affidavit because a "deponent may have been confused about what was being asked or have lacked immediate access to material documents").  For example, Goldman claims that Janet Baker previously testified in 2004 that Goldman's role did not include performing in-depth financial due diligence on Lernout & Hauspie for Dragon.  See Doc. 180 ¶ 15.  However, while she may have downplayed Goldman's role in her previous testimony, she did generally state that the Bakers wanted Goldman to "help us do whatever due diligence needed to be done . . ." Doc. 210 ¶ 15.

2. Defendant Goldman's motion for summary judgment on the Roth plaintiffs' claims (Doc. No. 133, 10-cv-10932) is **DENIED**. Genuine disputes of material fact exist with respect to when the statute of limitations period began to run and with respect to the merits of the tort claims.  Again, the Roth plaintiffs' statements in this case do not support application of the doctrine of judicial estoppel.  For example, Goldman claims that Roth previously testified in 2004 that he had decided to merge

with Lernout & Hauspie prior to the March 27, 2000 meeting with Goldman, and, therefore, could not have relied on Goldman.  Roth did say he "pretty much . . . made the decision to go ahead with [the merger] before [the] meeting."  Doc. 135, Ex. 23 at 152:8-13.  However, he added, "It was only a question of whether there was going to be some kind of . . . show-stopper."  Id. at 152:13-16.  A warning by Goldman not to merge could have been a "show-stopper."  Thus, Roth's previous testimony is not clearly inconsistent with his current position.

3. Plaintiffs Robert Roth and Paul G. Bamberg's motion for partial summary judgment (Doc. No. 144, 10-cv-10932) is **DENIED**. Genuine disputes of material fact exist with respect to Goldman's alleged negligent misrepresentation, intentional misrepresentation, and unfair and deceptive trade practices.

4. Plaintiffs Janet and James Bakers' motion for summary judgment (Doc. No. 198, 09-cv-10053) **IS ALLOWED IN PART AND DENIED IN PART.**  The Court **DENIES** the motion as to Goldman's liability for negligent and intentional misrepresentation, and under the Massachusetts Unfair or Deceptive Practices Act. Genuine disputes of material fact exist with respect to Goldman's alleged negligent misrepresentation, intentional misrepresentation, and unfair and deceptive trade practices.

The Court **ALLOWS** the motion as to Goldman's counterclaims against Janet Baker.  Janet Baker did not breach the fifth

sentence of Annex A of the Engagement Agreement because it applies only to derivative claims.  The indemnification provision also does not apply to Janet Baker.  She was not a signatory to that provision and her status as a third-party beneficiary (if proven) does not trigger liability under that provision.  <u>See</u> <u>International Customs Assocs. v. Ford Motor Co.</u>, 893 F. Supp. 1251, 1256 n.3 (S.D.N.Y. 1995)("The status of an intended third-party beneficiary . . . does not give others the right to sue that person on the contract.").  Goldman claims Janet Baker is liable as a "personal representative" of Dragon, which no longer exists.  Under New York law, a "personal representative" is "a person who has received letters to administer the estate of a decedent."  N.Y. EPTL § 1-2.13; <u>see also</u> Blacks Law Dictionary 1416 (9th ed. 2009)(defining "personal representative" as "[a] person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate.").  Janet Baker is clearly not Dragon's personal representative in this sense.

The issue was poorly briefed by both sides.  Goldman provided no caselaw to support its contention that a board member and shareholder--who is a signatory to only one sentence in the contract--is a "personal representative" of a company and is liable under the contract's separate indemnity provision, even after the company no longer exists.  To the extent the term is

ambiguous, the doctrine of <u>contra proferentem</u> applies because Goldman drafted the provision.  <u>See</u> <u>151 West Associates v. Printsiples Fabric Corp.</u>, 61 N.Y.2d 732, 734 (N.Y. 1984) ("[A]mbiguities in a contractual instrument will be resolved <u>contra proferentem</u>, against the party who prepared or presented it.").

5. Plaintiffs Janet and James Bakers' motion for summary judgment as to Goldman's third-party complaint (Doc. No. 197, 10-cv-10932) **IS ALLOWED IN PART AND DENIED IN PART.**  The motion is **<u>DENIED</u>** as to Goldman's third-party contribution claims because genuine disputes of material fact exist with respect to the Bakers' alleged negligence, negligent misrepresentation, and breach of their duty of loyalty to the Roth plaintiffs.  For the reasons stated in paragraph 4, the Court **<u>ALLOWS</u>** the motion as to Goldman's indemnification claim.


                              /s/ PATTI B. SARIS
                              Patti B. Saris
                              United States District Judge