**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JANET BAKER and JAMES BAKER,

Plaintiffs,

v.

GOLDMAN SACHS & CO.,
GOLDMAN SACHS GROUP, INC., and
GOLDMAN SACHS & CO., LLC,

Defendants.

**JURY TRIAL DEMANDED**

Civil Action No. 09-10053-PBS

ROBERT ROTH and PAUL G. BAMBERG,

Plaintiffs,

v.

GOLDMAN SACHS & CO.,

Defendant and
Third-Party Plaintiff,

v.

JANET BAKER AND JAMES BAKER,

Third-Party Defendants.

Civil Action No. 10-10932-PBS

**THE BAKER PLAINTIFFS' BRIEF IN OPPOSITION TO GOLDMAN'S MOTION TO ENFORCE COURT'S PROHIBITION ON EXTRAJUDICIAL STATEMENTS**

Terence K. Ankner, Esq. (BBO #552469)
Partridge Ankner & Horstmann LLP
200 Berkeley Street, 16th Floor
Boston, MA 02116
(617) 859-9999

Alan K. Cotler, Esq.
Michael T. Scott, Esq.
Joan A. Yue, Esq. (BBO #538220)
Debra A. Djupman, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Attorneys for Plaintiffs
Janet Baker and James Baker

Dated: December 9, 2012

The lack of merit in Goldman's motion is apparent in the title. Goldman boldly and wrongly accuses the Bakers' counsel of violating local rules purportedly constituting a "prohibition" on extrajudicial statements. Yet local rules – the rules with which this Court expressly instructed counsel to comply at the pretrial conference – prohibit extrajudicial statements only where a public dissemination of the statement "will interfere with a fair trial." Goldman has nothing more to support its claim that this "prohibition" has been violated than a single quote of counsel referencing information in public records and lacking in any specific detail about the claims and defenses in the case. The statement in no way prevents Goldman from obtaining a fair trial. No violation of local rules occurred.

Beyond describing the single quote at issue, Goldman devotes substantial effort to detailing for this Court all of the information published about this litigation in the press. Pre-trial press coverage does not inherently make a trial unfair to one of the litigants. The facts and arguments discussed by the press are set forth at length in the public filings wholly accessible on the case docket. Moreover, Goldman ignores that it has furnished information to the press about this case through its own public relations department.

It is undeniable that the press is interested in writing about Goldman Sachs. The Bakers did not create this interest. Goldman's prominence on Wall Street and its own conduct in recent years arguably contributed to it. But the Bakers cannot be blamed when the press examines publicly available information about litigation against Goldman and publishes its findings. Trials involving prominent parties or interesting stories generate public interest, and this trial is no different. In addition to Goldman's presence as a party, the Bakers' story and the development of speech recognition technology are topics that generate public interest. Goldman cannot show that the pre-trial publicity has harmed in any way its ability to get a fair trial; therefore, its motion should be denied.

## I. Goldman Cannot Show That Counsel's Statements Violate Local Rules Or That The Press Coverage Caused Goldman Prejudice

Goldman cannot show that counsel's statement to a Boston Globe reporter violated Local Rule 83.1A and this Court's instruction to follow the rule because it did not interfere with

Goldman's right to a fair trial. Both the Boston Globe article and the NPR radio report Goldman identifies state nothing more than the information already in the public record in the pleadings and briefing in this case.[1] Goldman cannot show prejudice simply because a public proceeding is being discussed in public.

First, Goldman cannot claim it will be denied a fair trial by the one and only extrajudicial statement by counsel in the December 7 media coverage. The Bakers' counsel, Alan Cotler, is quoted by the Boston Globe's Steven Syre as follows:

> 'Jim and Janet Baker spent about 25 years of their lives creating Dragon to realize their dream of having millions of people use computers and other devices that understand human speech,' says Cotler, who was in Boston Thursday preparing for trial.
>
> 'Goldman Sachs played a fundamental role in the Bakers losing all that,' he says. 'Today speech recognition is being used throughout the world, and its best and most productive applications are still yet to come.'

See Exhibit A to Goldman's Motion.

Mr. Cotler's statement to Mr. Syre is completely innocuous and cannot be construed in any way as violating the Local Rule on extrajudicial attorney communications.[2] It does not fall within the rule's scope because extrajudicial communications are prohibited only where there is a "reasonable likelihood that such dissemination [of this statement] with interfere with a fair trial." Quotation from or reference to public records are also excluded from the scope of the rule.[3] Goldman's own authority, *Joyce v. Town of Dennis*,[4] shows that even rather out-of-line statements must be found to interfere with a fair trial to violate the rule. In *Joyce*, an attorney for the defendant municipality both disclosed to the press the amount of plaintiff's settlement

---

[1] The Boston Globe article and transcript of the NPR report are attached as Exhibits A and G respectively to Goldman's Motion. This Court has recognized the public nature of the proceedings and reiterated that "a presumption of openness governs court filings." *See* Court's Standing Procedural Order Re: Sealing Court Documents, dated January 21, 2010. Indeed, this Court has denied multiple motions by both the Bakers and Goldman to file documents under seal.

[2] Contrary to Goldman's assertion, counsel's statement does not set forth facts that this Court has ruled are excluded, as it does not attempt to link the Bakers' technology with any particular product with which the jury may be familiar. Rather, it discussed voice recognition technology generally. This Court made clear: " . . . we're not going to talk about Siri or iPhones. I mean, we're going to talk about what was known or knowable at the time and what the hopes were for the technology. That's fair." Transcript of 11/29/12 Pretrial Conference, at p. 86.

[3] *See* L.R. 83.1A.

[4] 736 F. Supp. 2d 321,324 (D. Mass. 2010).

demand and wrongly claimed that the municipality's taxpayers would be forced to pay any settlement. Despite the court's finding that the attorney's conduct was "not exemplary," the statements did not violate local rules because the plaintiff could not show that the statements "had a reasonable or substantial likelihood of materially prejudicing or interfering with a fair trial."[5]

Mr. Cotler's statement in the Boston Globe focuses on the life-long goals of the Bakers to develop revolutionary speech recognition software. The statement references information already in the public filings in this case. The statement does not fall within the typical categories of improper statements identified in Rule 83.1A – those opining upon the merits of the claims against Goldman or impugn the character or credibility of any party or witness.[6] The Bakers' contention that Goldman Sachs "played a fundamental role" in the Bakers' losses can be presumed from the fact that the Bakers initiated this litigation. There is nothing in these words that creates a danger of an unfair trial for Goldman.

Second, even beyond the lone counsel statement, the content of the December 7 media reports do not in any way taint the jury pool or potentially create an unfair trial. The Boston Globe column set forth the position of both the Bakers and Goldman. The piece identifies what the columnist feels are substantial weaknesses in the Bakers' case, stating that they "made some odd, regrettable decisions along the way." The columnist further elaborates his concerns with Dragon's decision not to obtain a formal fairness opinion and the sellers' failure to use "common financial strategies to hedge some of the risk." The NPR radio report also presents the arguments of both the Bakers and Goldman as articulated in their public filings in this litigation, explaining that "the Bakers are not blameless in this because they were in a rush to get this deal done."[7] The content of these reports, which summarize the facts and arguments the parties have set forth throughout the litigation, do not create a danger of an unfair trial.

---

[5] *Id.*

[66] See L.R. 83.1A (restricting statements discussing "[t]he character, credibility, or criminal record of a party, witness or prospective witness" or counsel's "opinion as to the merits of the claims or defenses" where such statements interfere with a fair trial).

[7] See Exhibit G to Goldman's Motion, at p. 6.

Finally, Goldman's argument that counsel for the Bakers disseminated inadmissible evidence to the reporters at issue is pure speculation and lacks factual support. Goldman acknowledges that there is no evidence that counsel stated any inadmissible information to reporters, stating only that "in context" one can draw "the inference" that counsel provided the facts.[8] Again, the material identified by Goldman is contained within the public filings in this case. Any reporter covering legal disputes knows how to pull documents from PACER. Goldman's "inference" that the Bakers' counsel gave all of this information to these reporters simply does not hold up.

**II. Goldman Itself Continues To Make Extrajudicial Statements About The Case**

Goldman's claim that counsel for the Bakers are "prohibited" from making extrajudicial statements is particularly misplaced given that Goldman itself makes statements about the case to the press. Instead of speaking through counsel, Goldman uses its sophisticated public relations department, no doubt with the assistance and approval of counsel, to tell its side of the story. Goldman's counsel admits that Goldman directed the Boston Globe reporter inquiring about the case to the carefully worded statement Goldman placed on its website in July 2012 responding to the July 15, 2012 New York Times Article about the case. The Goldman statement, which still appears on its website,[9] shows just the type of statements Goldman is claiming are "prohibited." For example:

- Goldman disparages the Bakers by publicly accusing them of lying. Goldman states "[t]he former shareholders have brought these lawsuits almost a decade after the events and only after suing and blaming other parties for the same losses while disclaiming any wrongdoing on the part of Goldman Sachs. They are now attempting to contradict their earlier testimony."
- Goldman criticizes the decisions of Janet Baker and speculates as to her motives behind them, stating "Lernout & Hauspie offered a half-cash and half-stock purchase of Dragon. Without Goldman Sachs' advice or consulting with her board, the founder of Dragon [Janet Baker] agreed instead to an all-stock transaction, which the founder [Janet Baker] apparently saw as means to a higher overall nominal transaction price."

[8] See Goldman's Motion, at p.2, n.1.

[9] A copy of Goldman's statement, downloaded from its website, is attached as Exhibit 1.

Goldman admits that its PR department referred Boston Globe columnist Syre to this very statement posted on its public website, thus reaffirming these statements to the press. These statements both attack the "character [and] credibility" of a party and offer an opinion "as to the merits of the claims or defenses of a party."[10] Goldman's statement is prejudicial to the Bakers and should be removed from its website immediately. Syre could have easily chosen to quote Goldman's publicly stated positions. Instead he chose to quote the Bakers' counsel.

## III. Goldman's Last Minute Claim Of Prejudice Demonstrates That Their Motion Is Nothing More Than Another Attempt To Obtain A Continuance

Goldman refers the Court to the July 15, 2012 New York Times article detailing the Bakers' claims against Goldman. Goldman knew about this article since the time of its publication, yet made no claim of prejudice or sought any relief from this Court at that time. Goldman identified information posted on the Wikipedia pages of both Goldman Sachs and Dragon Systems of which it disapproves. Despite pointing the finger for these anonymous postings at the Bakers and their counsel – with any basis whatsoever for their allegations – Goldman made no claim of prejudice or sought relief from the Court upon discovery of these postings.[11] Yet conveniently, one business day before trial, Goldman has now decided that any extrajudicial statement about the case will prejudice its ability to obtain a fair trial.

Goldman's motives are transparent. Goldman's motion is yet another attempt to delay the start of this trial. After previously failing in its attempt to push back the trial date until 2013,[12] Goldman has now resorted to personal attacks against opposing counsel and trumped up claims of prejudice to create delay. Goldman claims this Court should grant a continuance to afford a "cooling off period" after the media coverage on December 7. Goldman fails to specify how long this "cooling off period" should be, but it is irrelevant. Any alleged potential prejudice

---

[10] *See* L.R. 83.1A.

[11] Contrary to Goldman's unfounded speculation neither the Bakers nor their counsel had anything to do with the Goldman Wikipedia entry.

[12] See Goldman's Motion to Continue (Doc. No. 257).

within the jury pool can be eliminated on voir dire.[13] There is no basis for Goldman's requested continuance, and this Court should not entertain Goldman's demand.

## **CONCLUSION**

Innocuous statements to the press by counsel do not violate local rules. Reiterations in the press of the facts and arguments set forth in public filings do not eliminate Goldman's ability to obtain a fair trial. And Goldman's latest transparent attempt to delay the trial has no basis. This Court should deny Goldman's motion and allow the trial to proceed.

/s/ Terence K. Ankner
Terence K. Ankner, Esq. (BBO #552469)
Partridge Ankner & Horstmann LLP
200 Berkeley Street, 16th Floor
Boston, MA 02116
(617) 859-9999

/s/ Alan K. Cotler
Alan K. Cotler, Esq.
Michael T. Scott, Esq.
Joan A. Yue, Esq. (BBO #538220)
Debra A. Djupman, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Attorneys for Plaintiffs
Janet Baker and James Baker

Dated: December 9, 2012

[13] *See Joyce v. Town of Dennis*, 736 F. Supp. 2d 321 (D. Mass. 2010) (finding that "the Court can mitigate any potential prejudice [from counsel's extrajudicial statements] through jury voir dire and jury instructions"). Plaintiffs have previously requested that the court question potential jurors about whether they have read anything about the case on voir dire

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 9, 2012.

/s/ Alan K. Cotler
Alan K. Cotler

# EXHIBIT 1





# THE NEW YORK TIMES ARTICLE ABOUT DRAGON SYSTEMS




On July 15, 2012, *The New York Times* published an article about Dragon Systems, a voice technology company that was acquired in a 2000 all-stock transaction by Lernout & Hauspie (L&H), a Belgium-based speech recognition company which later went bankrupt in the wake of accounting irregularities that emerged.

Below are important facts, many of which were not included in the article:

- Goldman Sachs was retained in December 1999 by Dragon Systems, not its shareholders, as a financial advisor.

- Certain of Dragon Systems' shareholders individually, not the company, have filed the lawsuits.

- The former Dragon shareholders have brought these lawsuits almost a decade after the events and only after suing and blaming other parties for the same losses while disclaiming any wrongdoing on the part of Goldman Sachs. They are now attempting to contradict their earlier testimony.

- Dragon was struggling financially and its preferred acquirer opted not to pursue a transaction.

- Lernout & Hauspie offered a half-cash and half-stock purchase of Dragon. Without Goldman Sachs' advice or consulting with her board, the founder of Dragon agreed instead to an all-stock transaction, which the founder apparently saw as means to a higher overall nominal transaction price.

- The Goldman Sachs advisory team recommended that Dragon Systems first retain accounting professionals to conduct extensive accounting diligence on Lernout & Hauspie, which the company did not do. Goldman Sachs did not render a fairness opinion in connection with the transaction.

- The founders of Dragon agreed to lock-ups and took no steps to hedge their risk to L&H stock, without advice from Goldman Sachs.

- The lawsuits are completely without merit, and we have and will continue to vigorously contest them.

PRIVACY AND SECURITY TERMS OF USE REGULATORY DISCLOSURES SITEMAP © COPYRIGHT 2012 GOLDMAN SACHS. ALL RIGHTS RESERVED