UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
JANET BAKER AND JAMES BAKER,      )
            Plaintiffs            )
                                  )
v.                                )Civil Action No. 09-10053-PBS
                                  )
GOLDMAN SACHS & CO., et al.,      )
            Defendants.           )
_____)
                                  )
ROBERT ROTH and PAUL G. BAMBERG,  )
            Plaintiffs            )
                                  )
v.                                )
                                  )Civil Action No. 10-10932-PBS
GOLDMAN SACHS & CO.,              )
            Defendant and         )
      Third-Party Plaintiff,      )
                                  )
v.                                )
                                  )
JANET BAKER AND JAMES BAKER,      )
      Third-Party Defendants.)
_____)
```

**MEMORANDUM AND ORDER**

September 4, 2013

SARIS, C.J.

Plaintiffs James and Janet Baker move this Court pursuant to Fed. R. Civ. P. 59(e) to reconsider its decision finding in favor of Defendant Goldman Sachs ("Goldman") on their ch. 93A claims. Plaintiffs Robert Roth and Paul Bamberg move the Court pursuant to Fed. R. Civ. P. 52(b) to amend its ch. 93A decision. The

1

Court assumes familiarity with its previous decision.  See Baker v. Goldman Sachs & Co., 2013 WL 2540025 (D. Mass. June 11, 2013). After a review of the record, the plaintiffs' motions (Doc No. 482, 1:09-cv-10053; Doc. No. 503, 1:10-cv-10932; Doc. No. 515, 1:10-cv-10932) are **DENIED**.

**A. The Bakers' 59(e) motion**

There are generally "three grounds for a valid Rule 59(e) motion: an 'intervening change' in the controlling law, a clear legal error, or newly-discovered evidence."  Soto-Padró v. Public Bldgs. Auth., 675 F.3d 1, 9 (1st Cir. 2012).  "[A] party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that could, and should, have been made before judgment issued."  Id. (internal quotations omitted).

The Bakers contend that the Court made a clear legal error when it held that Goldman's negligent conduct must be "egregious" to violate Mass. Gen. Laws. ch. 93A.  See Baker, 2013 WL 2540025, at *7 (quoting In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 185 (1st Cir. 2009))("'[T]he defendant's conduct must be not only wrong, but also egregiously wrong.'"). The First Circuit has held: "[C]hapter 93A is intended exclusively for egregious conduct."  Amerifirst Bank v. TJX Cos., 564 F.3d 489, 497 (1st Cir. 2009).  This egregiousness standard is rooted in Massachusetts caselaw.  See, e.g., Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 62 (2004)("[A] negligent

2

misrepresentation may be so extreme or egregious as to constitute a violation of G. L. c. 93A, § 11."); O'Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 216 (2008)(same); VMark Software v. EMC Corp., 37 Mass. App. Ct. 610, 624 (1994) ("[Defendant's conduct] is insufficiently egregious to bring the offending party within [the scope of ch. 93A liability]"); see also McHugh, Business Remedies Under Chapter 93A app. A.14, Chapter 93A Rights and Remedies (Mass. Continuing Legal Educ. 2010)("Chapter 93A claims generally need as a base some egregious breach of contract or a serious misrepresentation of a key element in a transaction."). In fact, in their original brief and at oral argument, the Bakers admitted that the standard is "egregious professional negligence." Doc. No. 451 at 14, 1:09-cv-10053; Doc. No. 467 at 5:22-25, 1:09-cv-10053.

Similarly, the Bakers contend that the Court's statements that Goldman's negligent acts were not "so egregious" or "egregious enough" to impose ch. 93A liability necessarily implies that they were egregious. In fact, the Court was simply echoing the Supreme Judicial Court's language in Marram that "a "negligent misrepresentation may be *so . . . egregious* as to constitute a violation of [ch. 93A]." 442 Mass. at 62 (emphasis added). Moreover, while the Court relied on the Bakers' expert Donna Hitscherich's testimony regarding Goldman's professional negligence, the Court did not credit Hitscherich's comment that

3

she was "shocked" by Goldman's "grossly subpar" work, which overstates the professional negligence.

The Bakers argue that under Massachusetts caselaw, ordinary negligent misrepresentations violate ch. 93A. The Bakers are wrong. While not every ch. 93A case from the Supreme Judicial Court states that negligent acts must be egregious, the Court has consistently held that "a negligent act or acts, alone, do not violate c. 93A." Klairmont v. Gainsboro Rest., Inc., 465 Mass. 165, 176 (2013); see also Meyer v. Wagner, 429 Mass. 410, 424 (1999)("[A]n unfair or deceptive act [under ch. 93A] requires more than a finding of negligence."); Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 288 (1993)("[N]ot every negligent act is unfair or deceptive and thus unlawful under G. L. c. 93A, § 2."); O'Connor, 73 Mass. App. Ct. at 216 ("[A] negligent act standing by itself does not give rise to a claim under c. 93A."). To be clear, although this Court found that Goldman committed a negligent misrepresentation and professional negligence, based on the evidence at trial the Court finds its conduct was not unfair or deceptive under ch. 93A.[1] See id. ("Even had we concluded that [defendant] had made a negligent misrepresentation . . . [m]ore is required [to violate ch. 93A]."); DeWolfe v. Hingham

---

[1] The Bakers similarly argue that the Court legally erred when finding that Charles Elliott's conduct did not violate ch. 93A. The Bakers are rehashing an argument previously rejected by the Court, and have presented no new law or evidence for the Court to reconsider its decision.

Ctr., Ltd., 464 Mass. 795, 799 n.9 (2013)(Whether a "negligent misrepresentation may be a sufficient basis for liability under G. L. c. 93A . . . will depend on the evidence presented [at trial].").

The Bakers also contend that the Court legally erred when it gave weight to the jury's verdict in favor of Goldman on the professional negligence claim.  See Baker, 2013 WL 2540025, at *13.  The Bakers argue that a court deciding ch. 93A claims may not defer to a jury verdict with which it disagrees, but cite no cases to support this proposition.  A court may properly accord a jury's findings respect and deference in its ch. 93A decision.  See, e.g., Int'l Totalizing Sys., Inc. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 435 (1990).  Before trial, the Bakers even requested the Court to seek an advisory verdict from the jury on the ch. 93A claims.  See Doc. No. 331 at 2, 1:09-cv-10053. Regardless, even if the Court had not given weight to the jury's verdict, Goldman's professional negligence did not rise to the level of ch. 93A liability.

**B. Roth and Bamberg's 52(b) motion**

Rule 52(b) motions are designed "to correct, clarify, or amplify the findings."  9 J. Moore et al., Moore's Federal Practice § 52.60[3] (3d ed. 2011); see Northeast Drilling v. Inner Space Servs., 243 F.3d 25, 35 (1st Cir. 2001).  However, a party may not utilize a Rule 52(b) motion "to rehash old

arguments already considered and rejected by the trial court." Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990). Ultimately, the decision to grant or deny a motion to amend lies within the discretion of the Court. Sequa Corp. v. GBJ Corp., 156 F.3d 136, 143 (2d Cir. 1998).[2]

Roth and Bamberg contend that the Court erred when it found that Goldman's failure to inform them personally about the February 29, 2000 memorandum did not violate ch. 93A. The Court denied their claim "because the Goldman bankers reasonably believed that Janet Baker and Chamberlain, their main contacts at Dragon, would inform the rest of Dragon's board and senior management about important events and documents leading up to the merger." Baker, 2013 WL 2540025, at *10. The Court's finding is supported by the record. Although Roth and Bamberg did not receive the February 29 memo, they testified that they had minimal contact with Goldman and relied on Dragon's senior management to keep them apprised of significant developments in connection with Dragon's merger with Lernout & Hauspie ("L&H"). See Tr. 58:25-59:6, 61:19-22, Jan. 3, 2013; Tr. 113:11-114:9,

---

[2] Goldman contends that Bamberg and Roth's motion should be treated as a Rule 59(e) motion for reconsideration. The distinction between motions pursuant Rules 52(b) and 59(e) is not of "dispositive significance." Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 536-37 (1st Cir. 2011) (internal quotations omitted). Under either standard, Bamberg and Roth's motion fails.

6

133:4-134:23, Jan. 2, 2013.

Roth and Bamberg also argue that the Court erred by failing to consider whether Goldman banker Richard Wayner's course of conduct as a whole constituted a ch. 93A violation. See Greenstein v. Flatley, 19 Mass. App. Ct. 351, 356 (1985)(finding that defendant's "pattern of conduct . . . to misrepresent the true situation to the plaintiff" violated ch. 93A). The Court found that Wayner was "at most negligent" for not "inform[ing] the plaintiffs that no one at Goldman was covering L&H," made "a negligent misrepresentation" by omitting "any statement [at the March 27 board meeting] with respect to dissatisfaction with the financial due diligence," and "was professionally negligent by not adequately analyzing the Asian revenues, reviewing the licensing agreements, and scrubbing L&H's projections." Baker, 2013 WL 2540025, at *9-10, 13. However, even when these acts are taken together, Wayner's conduct was negligent and did not rise to the level of ch. 93A liability.

Finally, Roth and Bamberg claim that the Court committed a legal error when it held that ch. 93A liability under Massachusetts regulation 940 CMR § 3.16(2) does not apply to business to business transactions under Mass Gen. Laws ch. 93A, § 11. Id. at *14 (citing DentalNet, Inc. v. Aquino, 291 B.R. 229, 241 (D. Mass. 2003)). The regulation states: "[A]n act or practice is a violation of [ch. 93A, § 2] if . . . [a]ny person

or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." 940 CMR § 3.16(2). In Knapp Shoes Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737 (1994), the Supreme Judicial Court expressly stated that regulations including 940 CMR §3.16(2) "were never intended to apply to Section 11 disputes." Id. at 745 n.8. Roth and Bamberg cite no cases from the Supreme Judicial Court and only one Massachusetts Appeals Court case decided after Knapp to support their position that the regulation applies to § 11 cases. In Lily Transp. Corp. v. Royal Institutional Servs., Inc., 64 Mass. App. Ct. 179 (2005), the Appeals Court listed 940 CMR §3.16(2) at the end of a string citation for the contention that "actively misleading" a counterparty in a business transaction can violate ch. 93A. See id. at 187. Federal district courts have split on this issue. Compare DentalNet, Inc. v. Aquino, 291 B.R. 229, 241 (D. Mass. 2003), with Traffic Markings v. P.K. Contr., 2002 U.S. Dist. LEXIS 18685, *39 (D. Mass. 2002).

    Plaintiffs are trying to gild the Lily to the extent they seek to bootstrap the appeals court's holding into precedent for finding that a negligent misrepresentation to a buyer in a commercial context, without more, is sufficient to trigger liability. In any event, one leading commentator has concluded

that the regulations do not apply in § 11 actions involving purely business transactions.  See McHugh, Attorney General Regulations Under Chapter 93A § 1.5, Chapter 93A Rights and Remedies (Mass. Continuing Legal Educ. 2010) ("The reasoning of the Knapp case suggests that none of the attorney general's regulations will be applied to Section 11 cases, unless and until the attorney general promulgates regulations dealing specifically with business-to-business disputes.").  Even if Lily creates some ambiguity in state law, a court sitting in diversity is not supposed to create new law.  See Blinzler v. Marriott Int'l, 81 F.3d 1148, 1151 (1st Cir. 1996).

Roth and Bamberg also make arguments that the Court erred with respect to its findings regarding the Charles Elliott phone call, Project Sermon, the March 27 board meeting, professional negligence, Goldman "aiding and abetting" Janet Baker's conduct, and Goldman's document retention policy.  These arguments simply rehash contentions which the Court has already rejected.

## V. ORDER

The plaintiffs' motions (Doc No. 482, 1:09-cv-10053; Doc. No. 503, 1:10-cv-10932; Doc. No. 515, 1:10-cv-10932) are **DENIED**.

                                 /s/ PATTI B. SARIS
                                 Patti B. Saris
                                 Chief United States District Judge